## WILLIAM HILL

*v.*

## SARAH A. RENO *et al.*

*Filed at Ottawa May 10, 1883.*

1. PARTITION—*of the right to partition—whether it is discretionary with the court.* Where a case is fairly brought within the law authorizing a partition, the right to partition is imperative, and absolutely binding upon courts of equity. They are not clothed with such discretion as that, under a given state of facts, they may grant the relief or refuse it, and yet commit no error. To invoke this equitable remedy is a matter of right, and not of mere grace.

2. SAME—*as between a lessee of premises, who also holds the fee in a part of the reversion, and other tenants in common.* The lessee of real estate, the reversion in fee of which is in several tenants in common, can, by purchasing a part of the reversion, and taking an assignment thereof to himself, demand, as a matter of right, a partition in chancery, even though such partition will necessarily result in a sale of the premises.

3. So where a lessor of premises died, leaving several heirs at law, to whom the property descended, upon the purchase by the lessee, of the fee in the reversion belonging to one of the heirs, he acquired a right to have partition, as against the heirs who retained their shares, and, if necessary to the making of partition, to have the entire premises sold.

4. SAME—*effect of a sale on the rights of the respective owners, as to the leasehold estate.* In such case the purchase by the lessee, of the interest of one of the heirs in the reversion in fee, would operate as a merger, *pro tanto*, of the term, and consequently all covenants in the lease, to pay rent, taxes, etc., would thereby be extinguished as to the part purchased by him. But this would in nowise affect the respective rights under the lease, of those of the heirs who still retained their interest in the reversion. As to them, and their several shares in the property, the lease and all its provisions would remain in force and effect just as though no merger or extinguishment had taken place, each of them holding his rights under the lease in severalty, having no interest in or concern with the rent belonging to the others.

5. In the event that a partition could be effected only through the instrumentality of a sale of the premises and a distribution of the proceeds of such sale among the several parties in interest, the mere fact that difficulties may arise in the adjustment of the distribution, or inconveniences, or even possible losses result from the change in the relations of the parties to the estate, by reason of a sale, will in nowise affect the absolute right to have partition.

APPEAL from the Superior Court of Cook county; the Hon. JOHN A. JAMESON, Judge, presiding.

Messrs. CAMPBELL & CUSTER, for the appellant:

In case a sale is decreed, can it be made of the whole premises subject to the lease, as an entirety, or must the undivided interest of appellees be sold subject to the lease, and the undivided interest of appellant be sold free from the lease? If the assignee of the lease were not connected with the freehold, any one of the tenants in common would be entitled to partition, and the sale would be subject to the unexpired lease. *Scoville* v. *Hilliard,* 48 Ill. 453; *Fight* v. *Holt,* 80 id. 84.

On the question of merger of the leasehold interest of appellant in the freehold, counsel cited *Richardson* v. *Hockenhull,* 85 Ill. 124; *Worcester National Bank* v. *Cheeney,* 87 id. 602; *Campbell* v. *Carter,* 14 id. 286; *Ætna Life Ins. Co.* v. *Case,* 89 id. 170; *Dunphy* v. *Riddle,* 86 id. 22; *James* v. *Morey,* 2 Cow. 246; *Freeman* v. *Paul,* 3 Greenlf. 260; *Dougherty* v. *Jack,* 5 Watts, 456.

It is only by decreeing the continued existence of the lease as an entirety that equal and exact justice can be done to the parties, and then a sale should be subject to the lease. Would a sale of the premises in any manner be so inequitable, as to appellees, that a court of chancery, administering the statute law on partition, would refuse to decree such sale? To establish the affirmative of this, it must appear not only that appellees would be injured thereby, but that there is something in the law itself, or in the relations of these parties, which prevents or estops appellant from claiming his right to a partition by a sale. *Hilliard* v. *Scoville,* 52 Ill. 449.

Messrs. WAITE & CLARKE, and Mr. J. B. SKINNER, for the appellees:

Pending the existence of the lease there could be no partition of the premises by sale, and the dismissal of the bill

was correct. Neither party to the lease, nor his assigns, without mutual consent, could do any act, pending the term created by the lease, to impair or extinguish its covenants, or the demised term. When the two estates met in appellant his leasehold interest was *pro tanto* merged, and became extinct. *Carroll* v. *Ballance*, 26 Ill. 9; *Lansing* v. *Pine*, 4 Paige, 639.

As to instances where a partition has been refused as inequitable or in contravention of contract, etc., see *Shillito* v. *Pullan*, 2 Disney, (Ohio,) 588; *Peck* v. *Cardwell*, 2 Beav. 137; *Cubbage* v. *Franklin*, 62 Mo. 364; *Selden* v. *Vermilya*, 2 Sandf. Ch. 568; *Lansing* v. *Pine*, 4 Paige, 639.

The right to partition under the statute is not absolute in all cases, even if the parties have done nothing to bar or waive the right. *Hartman* v. *Hartman*, 59 Ill. 103.

While appellees would suffer injustice by decreeing a partition by sale, appellant can suffer none at all by a refusal, for he is already entitled to the exclusive possession of the entire premises until the expiration of the term. On a sale appellant would occupy a better position as a purchaser than appellees, who, on a purchase, would be forced to invest their money in property the market value of which has been impaired, and from which they could get no return for over nine years.

Mr. JUSTICE MULKEY delivered the opinion of the Court:

This is an appeal from a decree of the Superior Court of Cook county, dismissing, on the hearing, a bill brought by William Hill, the appellant, against Sarah A. Reno, Eugenia M. Little, Charles A. Reno and Jacob H. Little, the appellees, for the partition of certain real estate in the city of Chicago.

No controverted questions of fact arise upon this record. The undisputed facts of the case are, that Abner R. Reeves, being the owner in fee of the land in controversy, on the 28th

of January, 1872, leased the same to William Parmelee for a term of twenty years, from the first day of April then next following, at an annual rent of $2400 for the first five years, to be paid quarterly. At the expiration of the first five years, and at the end of each successive five years, a new valuation or rental of the premises, equal to six per cent of their entire value, was to be fixed by arbitrators, to be chosen as in the lease provided. The lessee was to pay all taxes and assessments, including water rates, and in case of failure to do so, they were made a lien upon the improvements to be erected on the premises by the lessee. The latter covenanted and agreed to erect on the demised premises a building, to be worth at least $10,000, which the lessor agreed to purchase at the end of the term, at a price to be fixed by arbitration. The lessee was authorized to sell or assign his interest in the term, but the assignee was to be bound by all the covenants in the lease. While this lease was in full force, to-wit, on the 31st of October, 1875, the said Abner Reeves died intestate, seized in fee of the reversion in said premises, leaving certain collateral relations as his heirs at law, among whom were his sisters, Sarah A. Reno and Eugenia M. Little, the other appellees being their respective husbands. Having acquired, by purchase, the interests of some of the other heirs in addition to what they had inherited themselves, Mrs. Reno and Mrs. Little, at the time of filing the present bill, respectively owned about one-third of the premises in question, and the residue belonged to the appellant, as hereinafter shown. Parmelee erected the house on the premises, as provided for in the lease, and subsequently sold and transferred the same, together with said lease, to others. In 1880, appellant purchased the leasehold estate, together with the building thereon, and took an assignment of the lease. In the following year he purchased and became assignee of so much of the reversion in said premises as was not owned by appellees, being a fraction over a third interest. After the commence-

ment of the present suit, to-wit, on the 23d of May, 1882, appellant and appellees selected arbitrators, in pursuance of the provisions of the lease, who appraised the rent for five years, from April 1, 1882, to the satisfaction of the parties, respectively, since which time appellant has regularly paid appellees their respective shares of the rent under such appraisement. It was also stipulated between the parties, for the purposes of the hearing, that the premises in question were not susceptible of division, except by means of a sale thereof.

Under the facts stated the simple question presented for determination is, whether the lessee of real estate, the reversion in fee of which is in several tenants in common, can, by purchasing a part of the reversion, and taking an assignment thereof to himself, demand, as a matter of right, a partition in chancery, when such partition will necessarily result in a sale of the premises.

Before giving a direct answer to this question it is proper to determine the exact legal relations of these parties with respect to the property in controversy. Upon the death of Reeves, the lessor, there was, by operation of law, a severance of the estate into as many distinct freeholds as he left heirs succeeding to the property, the share of each depending upon the nearness of the relation he bore to the deceased; but the law did not, and of necessity could not, ascertain or define the boundaries of their respective estates, hence it left them to possess and occupy the premises as a whole, according to their respective interests, until a partition could be effected in some mode authorized by law,—in other words, upon the death of Reeves his heirs at law succeeded to the property in question as tenants in common. The same law, therefore, which clothed them with the title to the property imposed upon them and their assigns all the inconveniences and hardships incident to the ownership of real estate thus held. (Sec. 1, chap. 39, Rev. Stat.; 1 Washburn on Real

Prop. (4th ed.) 653.) Perhaps the most important right which the law has annexed to this kind of tenancy is that of partition. In very ancient times this right, at least at law, was confined exclusively to lands held in parcenary, and as parceners always acquired title by inheritance, it followed the right extended only to estates in fee. But the law in this respect was changed by an act of the British parliament, as early as 31 Henry VIII, extending the right of partition to estates of inheritance, in joint tenancy, and in common.

But it is not necessary to go back to the common law, and ancient British statutes made in aid thereof, in support of the right in question in this State, for it is expressly conferred by our own legislature. Section 1, chapter 106, of the Revised Statutes, provides, "that when lands, tenements or hereditaments are held in joint tenancy, tenancy in common, or co-parcenary, whether such right or title is derived by purchase, devise or descent, or whether any or all of the claimants are minors or of full age, any one or more of the persons interested therein may compel a partition thereof, by bill in chancery, *as heretofore*, or by petition in the circuit court of the proper county," etc. Since the statute gives to every tenant in common of a freehold estate the right to coercive partition by bill in chancery, as the right had existed and been enforced by courts of equity before the passage of the act, it is important to determine, with some particularity, the true limits of chancery jurisdiction over the subject as it exists, independently of statutory provisions. While there is considerable controversy among authors as to when courts of equity first assumed jurisdiction in partition cases, and also as to the true grounds of the jurisdiction, yet all concede that it is of very ancient origin, extending back to the time of Elizabeth, and that no branch of equity jurisdiction is more universally recognized or firmly established than it is.

But the material question, so far as the case in hand is concerned, is, is this right to partition imperative and abso-

lutely binding upon courts of equity where a case is fairly brought within the law authorizing a partition, or are courts of equity clothed with such discretion that, under a given state of facts, they may grant the relief, or refuse it, and yet commit no error,—or, differently put, when they may grant the relief without committing an error, are they bound to do it? That they are so bound we think is fully shown by the general current of authorities. Freeman, in his work on Co-tenancy and Partition, sec. 424, in discussing this question says: "It is now certain that unless, when the titles of the respective parties are spread before a court of equity, it can see that there are legal objections to the complainant's title, *he can demand, as a matter of right, that it proceed with the partition.*" No question is made as to the sufficiency of appellant's title in this case. In *Smith* v. *Smith*, 10 Paige, 470, it is declared that partition is as much a matter of right in equity as it is at common law. In 5 Wait's Actions and Defences, the author lays down the rule in these words: "Tenants in common have an absolute right to a division of the land held in common, notwithstanding inconveniences may thereby result to the other tenants, or if partition can not be made, to a sale, and division of the proceeds,"—citing many authorities in support of it. Bispham, one of the most polished and accurate of modern law writers, in discussing this subject, in his work on Equity, (2d ed.) p. 532, holds this language: "This jurisdiction was assumed some time about the reign of Elizabeth, and became so well established, both in England and the United States, that to invoke this equitable remedy has become a matter of right, and not of mere grace." In support of the text numerous authorities are cited which fully sustain it. See, also, to the same effect, 2 Leading Cases in Equity, pt. 1, p. 906, *et seq.*

In *Howey et al.* v. *Goings*, 13 Ill. 95, this court cite with approval the following language held by the court in *Parker* v. *Gerard*, Amb. 236, namely: "That such a bill" (being a

bill in equity for partition) "is a matter of right, and there is no instance of not succeeding in it but where there is not proof of title in plaintiff." It will be thus seen that this court at an early day placed itself in line with the general current of authority on this question, in strong and emphatic terms.

Notwithstanding the rule as stated is almost universally conceded, nevertheless there are certain well recognized modifications of it. For instance, if an estate should be devised or otherwise conveyed to two or more, upon the express condition that it should not be subject to partition, or if several tenants in common, or joint tenants, should covenant between themselves that the estate should be held and enjoyed in common only, equity would not, in the absence of special equities, award a partition at the suit of some of the parties, against the objections of the others; and where the title of the complainant is doubtful,—or, in other words, where he does not show a clear right to partition,—it will not be awarded. So where several persons had purchased land, with a view of selling it out into lots for building ground, according to a certain plan, and it was agreed among them that neither of them should dispose of his share except in a certain manner, it was held, in a suit by the representatives of one of the parties against the survivors, that the agreement barred the right to partition. *Peck* v. *Cardwell*, 2 Beav. 137. See, also, in this connection, *Cubbage* v. *Franklin*, 62 Mo. 364; *Selden* v. *Vermilya*, 2 Sandf. (N. Y.) 568.

The principle which seems to underlie all these cases is, that equity will not award a partition at the suit of one in violation of his own agreement, or in violation of a condition or restriction imposed upon the estate by one through whom he claims. The objection to partition in such cases is in the nature of an estoppel. It is supposed by counsel for appellees that some such defence arises out of the relations of the parties to this record, which renders it inequitable to grant

the relief; but just what he or those under whom he claims have done to deprive him of the right of partition, the most valuable of all rights incident to such an estate, counsel have not satisfactorily shown.

Laying aside any vague or general notions we may have with respect to the merits of this case, let us look at the evidence itself to see if any such estoppel exists, and if so, the precise grounds upon which it rests. In the first place, it is to be observed that Parmelee, the original lessee, entered into no covenant or agreement, for himself or his assigns, that he or they would not purchase the reversion, or any part of it, after the execution of the lease, and no one pretends that under the general law there was anything illegal or inequitable in doing so. It follows, therefore, that appellant, as assignee of the lessee, had a clear legal and equitable right to acquire his interest in the reversion as he did. By his purchase he became tenant in common of the freehold and inheritance with appellees, and, so far as the right to partition is concerned, he unquestionably acquired the same right which the heirs had from whom he purchased. Now, it is manifest that either of the heirs, upon the death of Reeves, could, notwithstanding the lease made by him, have compelled a partition, by bill in equity, against the objections of all the other heirs and the owner of the term combined, although the partition would have resulted in a sale of the premises, and consequently, if not purchased by appellees, in depriving them of their shares of the rent and of all interest in or power to enforce the covenants in the lease,—a matter to which great importance seems to be attached by appellees' counsel. If either of the heirs might, through the instrumentality of a court of equity, have accomplished this without any violation of appellees' rights,—and this is not at all questioned,—upon what principle can it be contended that appellant, the assignee of such heir, may not do the same thing, for, at the very farthest, he asks to do nothing more

than what is conceded the heir might have done? The ordering of a sale of the premises will not necessarily deprive appellees of their rights under the lease. They have the same right to purchase them that any one else has, and if they are struck off to another for more than they are worth, or for more than appellees are willing to give, appellees will get the benefit of the enhanced price. As these matters are always taken into account by purchasers seeking investment for capital, viewed as a business transaction, it is to be presumed that the interest on the purchase money during the term would be about an equivalent for the rent, in which event appellees would lose nothing.

We agree with counsel for appellees on the question of *merger*. We think it clear, from the authorities, that upon appellant's purchase of his interest in the reversion there was a merger, *pro tanto*, of the term, and consequently the covenants to pay rent, taxes, assessments, etc., were thereby extinguished as to the part purchased by him. (Taylor on Landlord and Tenant, sec. 502; *Carroll* v. *Ballance,* 26 Ill. 19.) But we do not agree with counsel for appellees as to all the consequences which they assume will flow from such merger. As we understand it, the merger of the term and extinguishment of the covenants as to appellant's interest did not, and does not, at all affect the respective rights of appellees under the lease. As to them, and their several shares in the property, the lease and all its provisions are in force and effect just as though no merger or extinguishment had taken place, and will so remain as long as they continue to be owners of the reversion. But, as we have just seen, like all tenants in common of real estate not susceptible of partition except through the instrumentality of a sale, they are liable to lose all interest in the estate unless they will pay as much or more for it at the sale than any one else. As already seen, by the death of Reeves there was a severance of the freehold and inheritance into as many distinct estates as

there were heirs, and an apportionment of the rent between them according to their respective interests. After such apportionment of the rent neither of the heirs had any interest in or concern with the rent belonging to the others, and upon appellant's purchase of the shares of some of these heirs, it relieved him from the payment of so much of the rent as would have been due them but for his purchase; but his liability as to the other heirs and their assigns remained precisely as it did before. Taylor on Landlord and Tenant, (7th ed.) sec. 385; *Crosby* v. *Loop*, 13 Ill. 625.

Counsel for appellees say in their brief: "By the merger of the leasehold into the fee as to part of the premises, the covenants to pay rent and all taxes and assessments on that portion so merged have been forever extinguished, so that whoever should buy the premises as an entirety would take them in a very unsatisfactory condition. The sale would be made subject to the lease, and as appellant has a lease on two-thirds of the premises until April 1, 1892, and as, from the nature of the premises, it would be impossible to lease an undivided third to any other tenant, that portion would be not only entirely non-productive during the next nine years, but at the same time require the purchaser to pay out large sums for taxes and assessments." This is a misapprehension. The purchaser, in the case supposed, would have the same right to occupy and enjoy the premises, in proportion to his interest in the present estate, as the lessee himself; and if the lessee assumed the exclusive possession, he would be bound to account to the purchaser for something over one-third of their rental value, or the purchaser might rent, as is often done, his third interest, either to the lessee or a third party. A tenant in common has the same right to sell or lease his estate as an owner in severalty having exclusive possession. Freeman, in his work on Co-tenancy, sec. 220, says: "Co-tenants may lease either to one another or to strangers. They may all concur in the lease, or each may

lease his moiety separately. If, however, the lessors be coparceners, or tenants in common, *the lease operates as the separate demise of each, and must be so treated,*"—and this is the well recognized doctrine on the subject.

The further statement of counsel, that appellant "being in possession of an undivided two-thirds by virtue of his lease, must, of course, get the benefits of the whole of the premises, as in that way alone could he secure his rights to an undivided two-thirds," is therefore wholly unwarranted. It may be conceded that inconveniences, and even losses, might occur by reason of the state of things suggested, but they would not necessarily happen, and they are only such inconveniences and possible losses as are incident to such ownership of property, and all property is liable to become subject to this species of ownership. Whoever, therefore, succeeds to an estate thus circumstanced, whether by descent or purchase, while accepting the benefits which it confers must submit to all such inconveniences and losses as are incident to property thus held.

So far all the questions we have discussed are clearly settled by the authorities in the way we have stated, leaving no real ground for controversy. There is a single point, however, to notice, which presents the only difficulty or matter of doubt in the case. It is conceded if partition is awarded the premises are to be sold, and if so, of course must be sold as an entirety, subject to the lease, for we are satisfied the statute does not contemplate any other kind of sale. This being so, if the value of the shares of appellees, which are alone subject to the lease, are thereby enhanced, it is clear that a division of the proceeds of the sale in proportion to their shares in the fee would not be equitable to them; and if the converse of this hypothesis is true,—that is, if their shares are worth less, by reason of being subject to the lease,—they would receive more than they are entitled to if the proceeds were divided in that ratio. What is here said

of the shares of appellees subject to the lease, with a slight modification of the language, of course, is equally applicable to appellant's share without the lease. It may well be that the shares in the fee now held by appellant, if bought by a stranger, being divested by the merger of all right to demand rent under the lease from the lessee, and of all right to demand of the lessee payment of taxes or assessments, are less valuable than had no merger occurred. It may be that the mere right to occupy and use the premises in common with the lessee of the shares held by appellees is not so valuable as would have been the rights under the lease had no merger occurred. These are questions which pertain to the distribution of the proceeds, and not to the right to have partition made. If it be true that by the merger of the lease *pro tanto*, mentioned above, the value of the shares in the fee held by appellant has been impaired, and the value of his leasehold estate has been thereby enhanced, the relative value of the shares in the fee held by appellant, (as they actually now exist,) and of the shares held by appellees, with the benefits of the lease, if any, can readily be ascertained by the master, and the partition of the proceeds of the sale should be made upon this basis.

But does this difficulty, if it may be so regarded, in the absence of any other valid objection, warrant a denial of the right of partition altogether? Appellees maintain that it does, and cite two cases that seem to favor that view of the subject, namely, *Lansing* v. *Pine*, 4 Paige, 639, and *Shillito* v. *Pullan*, 2 Disney, (Ohio,) 588. But it does not appear the statutes of the States in which these cases arose, regulating partitions, are the same as our own, and even if they were, we would not feel ourselves absolutely bound by them in giving effect or a construction to our own statute.

But waiving this consideration, to which we attach but little importance, and viewing the question in the light of the acknowledged general principles which govern courts of chancery in administering this branch of their jurisdiction, we are

unable to perceive how the possible difference in the value of the shares of the parties, growing out of the fact that some of them are subject to an unexpired lease and others are not, presents an insuperable obstacle to a partition of the premises. It has always been understood, and it is so stated in all the text books we have examined on the subject, that one of the peculiar and main advantages of a partition in equity over one at law is, that in the former all inequalities of this character may be fairly and equitably adjusted. Where an actual partition is made, and there is any inequality in the value of the shares not justified by the interests of the parties in the estate, the court will decree pecuniary compensation, called *owelty*. But where, from any cause, one's share is worth more than another's, and a sale is ordered, the parties' rights are easily adjusted by a proper division of the proceeds. Bispham's Equity, secs. 491, 492; Freeman on Co-tenacy and Partition, sec. 425.

Applying these principles to the case in hand, if appellees' shares of this property are worth more by reason of being leased, as is contended by their counsel, is not that fact susceptible of proof, and can not the difference be fixed by the evidence as definitely as any other fact which depends upon the opinions of witnesses? We are unable to perceive any serious difficulty in determining this difference, if any such exists, and when once ascertained there would certainly be no trouble in making distribution of the proceeds of the property accordingly. This course would be in strict conformity with the practice of courts of equity in exercising this jurisdiction, from the earliest times. Moreover, after a most careful examination of the standard text books on the subject, we find no such qualification or limitation in them as that contended for, and this we regard as a very significant fact.

The decree of the court below is reversed, and the cause remanded for further proceedings in conformity with the views here expressed. *Decree reversed.*