JOSIAH H. BISSELL *et al.*

*v.*

FRED D. PEIRCE *et al.*

*Opinion filed February 19, 1900.*

1. PARTITION—*equitable title is available in equity for partition of lands.* That the legal title to land rests wholly in one person does not, of itself, present any obstacle to partition of the land among equitable owners.

2. CONTRACTS—*right of equity to terminate contract upon insanity of one whose personal skill is required.* Where parties have formed an enterprise, partaking of the nature of a partnership, under an agreement whereby the personal skill, judgment, experience and services of one party are put against the capital of the others, and the former becomes insane, a court of equity has power to decree a termination of the contract, sell the property involved and divide the proceeds according to the rights of the parties.

APPEAL from the Superior Court of Cook county; the Hon. FARLIN Q. BALL, Judge, presiding.

The decree appealed from awarded partition of certain premises between the parties hereto. The title to the property vested in appellee Peirce by deed dated

May 2, 1889. May 4, 1889, said Peirce, Espey L. Smith, George A. Mason, James R. Mann and Josiah H. Bissell entered into a written agreement under seal, which provided, in substance, that whereas said Peirce had purchased and held the legal title to lots 1, 2, 3, 18, 19 and 20, in block 5, in Stave & Klemm's subdivision of the northeast quarter of section 25, township 38, north, range 14, east of the third principal meridian, in the county of Cook and State of Illinois, and the other parties to the agreement had contributed certain portions of the purchase money, it was agreed between the parties:

*First*—That Peirce takes and holds the title in trust for the uses and purposes set forth in the contract.

*Second*—That Peirce should pay nine twenty-fourths of the cost of the premises and be entitled to a nine twenty-fourths interest therein; that Smith should pay four twenty-fourths of the cost of the premises and be entitled to a four twenty-fourths interest therein; that Mason should pay four twenty-fourths of the cost of said premises and be entitled to a four twenty-fourths interest therein; and that Mann and Bissell, jointly, should pay seven twenty-fourths of the cost of said premises and be entitled to a seven twenty-fourths interest therein; and that Peirce should hold the legal title to said premises for the benefit of all of said parties, or their assigns, in the proportions set fourth.

*Third*—If Peirce should sign any purchase money securities on account of the purchase of the premises, the other parties thereby agreed to pay their respective proportions of the same when due, and all parties agreed to advance and pay, as needed, their respective proportions of taxes, assessments, necessary expenses and cost of improvements upon the premises.

*Fourth*—That Mann and Bissell should have the care and control of the property and should manage the same, and cause to be made such improvements as may be necessary or agreed upon for the proper sale of the same in

the market, and sell the same at wholesale, or in sub-lots when subdivided, at such prices and such terms as may be agreed upon, and make no charge and receive no commission for their personal services other than their interest in the proceeds thereafter specified.

*Fifth*—Any one of the parties should have the right and power, at any time, to sell his proportion of the premises, but subject to the terms of the declaration of trust or agreement.

*Sixth*—Out of the proceeds of the premises, when sold, should be first re-paid to the respective parties the amounts of all taxes, assessments, expenses and costs of improvement paid by them, or any of them, with interest at six per cent from the date of payment to the time of re-payment, and next the amounts advanced by them as part of the purchase price or in payment of notes given therefor, with interest at six per cent per annum on all amounts remaining unpaid, to time of their re-payment.

*Seventh*—The net profits finally arising from the sale of the premises, after re-paying the purchase price, taxes, assessments, expenses and costs, etc., to be divided as follows: One-half of said net profits to be divided among the parties thereto, or their assigns, in proportion to their respective interests in the premises as set forth in the contract, and the other one-half to be paid to Bissell and Mann jointly, in full payment and discharge for their services in the care and management of the premises.

*Eighth*—That Peirce should have the right to execute deeds and make conveyances of the premises, or any portion thereof, at any time, and thereby convey full and complete title clear from the trusts therein described.

*Ninth*—That in case of dispute between the parties as to sales and improvements of said property the same should be determined by vote of the owners in proportion to their respective interests.

*Tenth*—That the contract should not be construed as creating partnership.

Under this contract Peirce was the equitable owner of nine twenty-fourths, Smith of four twenty-fourths, Mason of four twenty-fourths, and Mann and Bissell jointly of seven twenty-fourths of the property, which made up the whole. Under date of October 31, 1889, Mann and Bissell sold and conveyed to Smith four twenty-fourths, and under date of September 1, 1892, Mason sold and conveyed to Smith his four twenty-fourths interest, so that now the interests stand: Peirce nine twenty-fourths, Smith twelve twenty-fourths, and Mann and Bissell jointly three twenty-fourths, making the whole.

Subsequently to the purchase a subdivision was made of lots 1, 2, 19 and 20, and the east half of lots 3 and 18, into twenty-four lots, known as "Peirce's addition to South Shore." Four of these lots, viz., sub-lots 3, 4, 5 and 6, have been sold. Twenty lots of the subdivision, and the west half of lots 3 and 18 which was not included in the subdivision, remain. The parties made numerous advancements of money on account of the purchase of the property, for taxes, assessments, improvements, etc., each one paying his proportionate share, as provided by the contract, so that at the date of the report of the master, Peirce was entitled to have re-paid him, for advances, interest, etc., the sum of $5429.59, and Smith was entitled to be re-paid for advances, interest, etc., the sum of $7465.18. By virtue of an agreement between themselves when the transaction was begun, the net profits accruing to Bissell and Mann under the seventh clause of the agreement was to be divided as follows: Seventy per cent to Bissell and thirty per cent to Mann.

After the execution of the contract of May 4, 1889, the contents of which have been stated above, the property was cared for, controlled and improved by Mann and Bissell, in accordance with the fourth provision of said contract, until about January 4, 1893, when Bissell was adjudged insane by the probate court of Cook county and George W. Stanford was appointed his conservator. On

the 13th day of October, 1893, appellee Peirce, and Smith, filed a bill in equity against Mann, Bissell and George W. Stanford, conservator of Bissell, setting up the agreement between the parties, the transactions thereunder, the insanity of Bissell, and by reason thereof his inability and incompetency to discharge the duties personally incumbent upon him relative to the care and management of the property and procuring purchasers for the lots, etc., and praying that an accounting be had and taken, etc., the title to the premises fixed and declared and partition thereof decreed. Answers and replications were filed and the cause referred to the master. At the July term, 1899, the decree appealed from was entered. The appeal presents but two questions: (1) Whether the complainants were entitled to partition of the unsold portion of the premises; and (2) the court, in endeavoring to ascertain and secure to Mann and Bissell one-half the profits to arise from sales of the premises allotted (in case partition should be made) to Peirce and Smith, erred in decreeing the premises allotted should be sold for cash.

PARTRIDGE & PARTRIDGE, for appellants.

GEORGE W. MILLER, for appellees.

Mr. JUSTICE BOGGS delivered the opinion of the court:

The parties regarded themselves as the owners of the premises in question in proportion as they had contributed to the payment of the purchase price thereof. The fifth clause in the agreement authorized each and any of them "to sell his proportion of the premises," etc. In equity the parties are regarded as the owners of the land. The fact the legal title rested wholly in Peirce would not, in itself, present an obstacle to the power of a court of equity to decree partition. An equitable title is available on a bill in equity for the partition of lands. (*Johnson* v. *Filson*, 118 Ill. 219; 17 Am. & Eng. Ency. of Law,

684; Freeman on Co-tenancy and Partition, sec. 439.) But as the partition of the premises in this instance would operate to defeat the purposes designed to be accomplished by the agreement, it may well be doubted whether partition would be decreed if the contract was otherwise capable of enforcement. An agreement not to partition, though not expressed, would be readily implied and enforced if such implication proved necessary to secure the fulfillment of the agreement. It, however, as we think, was shown the enterprise to which the agreement relates could not be further prosecuted in compliance with the terms of the agreement, but that it had failed, or inevitably must fail, of consummation because of the insanity of said Bissell.

The fourth clause of the agreement committed the care, control and management of the premises to Mann and Bissell, and authorized them, and they undertook thereby, to cause such improvements to be made as should be necessary (or agreed upon) to put the premises in the best shape to attract purchasers; to seek for buyers, and make sale of the premises as a whole, or in lots if subdivided, etc. Mann and Bissell owned but a one-eighth interest in such premises but were entitled to receive one-half of the net profits of the enterprise, and, in addition, to share in the remaining one-half of the profits in proportion to their ownership in the subject matter of the transaction,—the premises in question. The services to be performed by Mann and Bissell required the exercise of the personal skill, judgment, energy, experience and discretion of each of them, and the presumption is unmistakable that they were selected to perform those duties because they possessed special skill, ability and fitness in the matter of controlling, preparing for sale and selling property of this description. For such personal service, skill and ability they were to be compensated by receiving one-half of the net profits that the enterprise yielded. An agreement entered into between

184—5

Mann and Bissell entitled Bissell to receive seventy per cent of this one-half of the net profits,—presumably because his skill, ability and experience were in that proportion superior to those of Mann.   The other parties to the agreement were entitled to the full benefit of the experience, judgment and skill of both Mann and Bissell. Bissell was adjudged to be insane in January, 1893, and a conservator was appointed to control and manage his property and affairs.   His insanity continued from thenceforward, and he was insane and his conservator had charge of his affairs when the decree was rendered, in 1899.   The skill and judgment which he is required, under the contract, to furnish the appellees, and the services which he is required to perform in the care, control and improvement of the property, he cannot render, and has not rendered since January, 1893, because incapacitated by reason of his insanity.   The property is still owned by the parties, their money still invested in the premises. It cannot be said by appellants, Stanford, the conservator, and Bissell, that Mann is not incapacitated to perform these services, for the reason that this does not relieve Bissell from his obligation under the contract, and for the reason that the contract between the parties entitles the appellees to the judgment, skill and services, not only of Mann, but of Bissell as well.

Though the agreement declares the relation of copartners shall not be deemed to exist, the enterprise embraced the most important features or elements of copartnerships.   Where parties become partners under an agreement, by the terms of which the capital of one is put against the skill, judgment and services of the other, and the one contracting to furnish his skill, judgment and services is subsequently materially incapacitated therefor by reason of insanity, a court of equity has power to decree a termination of the contract and sell the property involved and distribute the proceeds according to the rights of the parties. (*Raymond* v. *Vaughn*,

128 Ill. 256.)    We find in the undertaking of the parties
before the court the essential facts and substantially the
same rights and interests of parties which in the case of
a co-partnership authorize the application of equitable
principles and the aid of a court of equity in dissolving
the partnership and dividing and partitioning the prop-
erty among those who are entitled thereto as partners,
according to their several rights and interests. It is not
essential to the application of those principles of equity
the enterprise to be dealt with shall come within the
technical definition of a partnership.    The state of the
case developed by the proof in the cause entitled the ap-
pellees to the aid of a court of chancery, and to a decree
declaring the contract terminated and awarding partition
of the premises in question, and that relief was properly
granted.

The decree does not, as is complained, order the prem-
ises allotted to Peirce and Smith, in case partition is
made, shall be sold for cash in hand. The decree is, such
sale shall be made under an order of the court, to be en-
tered on the coming in and approval of the report of the
commissioners appointed to make partition.    The pur-
pose to be attained by the sales of the parcels allotted
to Peirce and Smith is to determine whether such par-
cels will yield a net profit, in order, if a net profit is so
realized, Mann and Bissell may receive one-half thereof
according to the terms and conditions of the agreement.
We cannot assume the court will order such sales to be
made for cash in hand.    The sales should be on ordinary
and reasonable terms of payment, and no doubt the court
will so order.

The decree is affirmed.            *Decree affirmed.*