Katherine K. Masters, Appellant, v. Paul H. Smythe, Jr. et al., Appellees.
Paul H. Smythe, Jr., Appellee, v. Oak Park National Bank et al., Defendants.

Gen. No. 10,423.

[redacted]

Opinion
filed December 6, 1950. Released for publication January 5, 1951.

SCHNEIDER, KOCH & CAMPBELL, of Chicago, for appellant.

BERNARD M. DECKER, of Waukegan, for appellee; HENRY D. FISHER, of Waukegan, of counsel.

MR. JUSTICE BRISTOW delivered the opinion of the court.

The partition proceeding instituted by Katherine K. Masters against Paul H. Smythe, Jr. et al., was consolidated with a subsequent partition proceeding filed by Paul H. Smythe, Jr., against the Oak Park National Bank, as trustee for Katherine K. Smythe Masters, and the circuit court of Lake county entered a decree therein for partition and sale, subject to a lease between the Oak Park National Bank, as trustee, and Paul H. Smythe, Jr., with the proceeds thereof to be divided equally between Katherine K. Masters and Paul H. Smythe, Jr. Both Katherine K. Masters, hereinafter referred to as the plaintiff, and Paul H. Smythe, Jr., hereinafter referred to as the defendant, have appealed from this decree.

The paramount issues presented herein are whether the lease is in full force and effect, and whether the de-

cree of sale orders a proper distribution of the proceeds in accordance with the interests of the parties in the premises.

From the record it appears that Katherine K. Smythe and Paul H. Smythe, Jr., originally owned the property in controversy in joint tenancy. On February 27, 1947, Katherine K. Smythe conveyed an undivided half interest in the premises to the Oak Park National Bank, as trustee, in an instrument whereby the bank agreed to hold the title for her, with remainder to her children, and to deal with the property only when authorized on her written direction. She had the sole power to deal with the title, and to manage and control the property. It was specifically stated that the trustee shall have no duty of management, or control, or the collection of rents, earnings, or proceeds, or the payment of taxes, insurance, or other liabilities. The only duty imposed upon the trustee was that if any property remains in the trust 20 years from the date of its creation, the property shall be sold and the proceeds divided among the persons entitled thereto.

The parties were divorced by decree entered January 13, 1948, which sets forth the terms of a lease to be executed as one of the integral parts of an agreement between the parties. Under the decree plaintiff is to lease her undivided half interest in the farm to the defendant for a period of seven years at an annual rental of $750 if she occupies a small cottage on the farm, and $900 if she does not reside there. $250 of the rent is to be payable in advance the first of the year, and from the balance may be deducted half of the interest and principal payments on the mortgage indebtedness, and half of the taxes and insurance. Plaintiff will be entitled to occupy the small cottage and be furnished with an electric stove, heater, and space heater, without charge, until the termination of the lease.

Pursuant to this decree a lease was executed by the Oak Park National Bank as trustee for Katherine K. Smythe, upon her written authority. The lease, however, referred to the entire property by metes and bounds, rather than to her undivided half interest. Other relevant portions of the lease were that any repairs shall be borne by Paul H. Smythe, Jr., who shall render an accounting to Katherine K. Smythe of the authorized deductions from the rent, and pay her the balance thereof on December 31 of each year; that the occupancy of the small cottage shall be restricted to her and any of her children; that if default shall be made in the payment of rent, or any part thereof, or in any of the covenants to be kept by defendant, "it shall be lawful for the party of the first part to re-enter with or without due process of law . . . and in order to enforce a forfeiture for non-payment of rent, it shall not be necessary to make demand on the same day the rent shall become due, but a demand and refusal or failure to pay at any time on any subsequent day, shall be sufficient, and after such default shall be made, the party of the second part . . . shall be guilty of forcible detainer of said premises. . . ."

From the testimony of the parties it appears that Katherine Smythe occupied the cottage from August 1, 1948, and on or about April 1, 1949, she married Alfred Masters, who resided on the premises with her for a short period. Defendant Smythe cut off the electrical service to the cottage about May 1, 1949, and refused to restore it despite a cease and desist notice from plaintiff. Moreover, he made no payment of rent on January 1, 1949, as provided in the lease, but in April 1949, his attorney presented an accounting alleging that $145 was due her, and charging her with the 1947 tax payment and certain decorating charges, which deductions have been objected to by plaintiff.

No rent, however, was paid until August 1949, when defendant sent her a check for $145 in payment of the rent due on January 1, 1949. Plaintiff did not cash the check, but turned it over to her attorney.

In the interval, on April 28, 1949, plaintiff filed her suit for partition, alleging the trust deed to the bank, the divorce proceedings, the interest of the parties in the real estate, the fact that it was subject to two mortgages, and may be subject to a lease, and praying for a partition of the premises, and a determination of the interests of the parties.

Defendant Paul H. Smythe, Jr. filed a motion to dismiss plaintiff's complaint on the ground that she had insufficient title to institute a partition proceeding, inasmuch as title to the property was in the Oak Park National Bank as trustee. Defendant also filed his own complaint for partition, setting up the lease from the bank, as trustee, and praying that the shares of Smythe and the bank be ascertained, and that any sale ordered shall be subject to the lease. The court denied Smythe's motion to dismiss plaintiff's complaint, and granted plaintiff's motion to consolidate the two causes, and appointed a guardian *ad litem* for the minor children.

On August 12, 1949, a decree for partition was entered, which provided, in substance, that Paul H. Smythe, Jr. is entitled to half of the premises, and Oak Park National Bank, as trustee, is entitled to the other half, subject to the right, title and interest of Katherine K. Masters and her three children; that commissioners shall make partition between Paul H. Smythe, Jr. and the bank, as trustee, assigning each half, or if division is impossible, appraise the property for its full value, and its value subject to the lease; and that the entry of the decree shall be without prejudice to the parties' right to question the validity of the lease, or raise any other issue.

The commissioners reported that the property could not be divided without manifest prejudice, that the full value of the property was $35,500, and its value subject to the lease was $28,000. The cause was transferred on a motion for change of venue, and after a hearing at which the facts hereinbefore noted were adduced, a decree of sale was entered on December 8, 1949.

The court found therein that the lease between the bank, as trustee, and Paul H. Smythe, Jr., was in full force and effect, and included within its terms all of the premises, rather than an undivided part thereof. The decree further recited that since Katherine K. Masters had the sole right to direct the trustee to act, by filing her suit for partition she exercised her right to direct the trustee, and thereby became the owner of an equitable half interest in the premises and, therefore, was entitled to receive half of the proceeds of any sale of the property, with Paul H. Smythe, Jr. to receive the other half. The sale was ordered, subject to the lease, on the basis of the $28,000 valuation, with the usual provisions for minimum sale price, and the decree allowed plaintiff and defendant to bid at the sale, with their half interest to be computed as part of the purchase price.

On December 23, 1949, plaintiff substituted attorneys, and the court ordered that such attorney fees as may be allowed shall be divided equally between plaintiff's original attorneys and defendant's attorney. The court denied plaintiff's motion to vacate the order of sale which, she contended, failed to fully adjudicate the rights of the parties in the property; erroneously found the lease binding, despite material breaches of its covenants by defendant; and failed to properly determine the rights of the parties to the proceeds of the sale, and to the rentals under the lease. On this ap-

191

peal, plaintiff has urged substantially these same grounds for reversal of the decree.

Defendant filed a cross appeal, alleging as error the denial of his motion to dismiss plaintiff's complaint; the consolidation of the complaints; the order providing for a division of attorney fees; the findings of the court that the lease was in full force and effect as far as plaintiff's rights were concerned, and that by filing her suit she became owner of an equitable one-half interest. Defendant urges that a proper decree of sale be ordered, subject to the lease, and finding that plaintiff has forfeited any rights to occupy the cottage and has insufficient title to institute the proceedings for partition.

■ ■ In adjudging the merits of the respective appeals, it is fundamental that before a partition proceeding can be maintained, a party must have either a legal or equitable interest in the real estate. (Ch. 106, par. 1, Ill. Rev. Stat. 1949 [Jones Ill. Stats. Ann. 109.450].) The trust instrument, by which plaintiff, Katherine K. Masters, conveyed her title to the bank, created merely a passive trust by which the trustee acquired the naked title, since the trust was completely subject to her control and direction. Katherine K. Masters retained all of the incidents of ownership, and the bank was expressly prohibited from dealing with the title or exercising any rights with reference to the property, except the single ministerial act of selling the trust *res* if the trust were in existence some 20 years hence. This provision does not necessarily result in an equitable conversion of plaintiff's interest. (I Bogert, Trusts and Trustees, 588; *Bissell v. Pierce,* 184 Ill. 60; *Fox v. Fox,* 250 Ill. 384.) Even if such a superficial construction of the instrument were made, plaintiff, by filing the suit and making the trustee a party defendant, has given the trustee a sufficient di-

rection to reconvey the property in equity to her. Therefore, the circuit court did not err in determining that plaintiff had a sufficient equitable title to maintain this proceeding.

In the case of *Aronson v. Olsen,* 348 Ill. 26, cited by defendant Smythe, where there were multiple beneficiaries of the trust, the court refused partition, not merely because of a purported equitable conversion of their interests, but because there was an implied agreement between the parties not to partition, and to allow the proceedings would have been tantamount to enforcing a violation of their agreement. Hence, this case is not determinative of the rights of the plaintiff herein.

██ With reference to the court's findings that the property should be sold subject to the lease, plaintiff asserts that defendant breached major covenants of the lease warranting its forfeiture, and that the sale of the premises should have been ordered without reference to the lease. Defendant, by his own admission, failed to render an accounting on December 31, 1948, as required by the lease, failed to pay the 1948 taxes when due, and failed to make any payment of rent on January 1, 1949. In fact, no payment was made until August 1949, some four months after plaintiff had instituted partition proceedings. Defendant then sent plaintiff a check for $145, which she did not cash, but turned over to her attorney, since the payment was not only delinquent but substantially insufficient. As hereinbefore noted, defendant had filed an accounting through his attorney in April 1949, in which he had claimed deductions for the payment of the 1947 taxes. Inasmuch as these taxes were levied prior to the execution of the lease, and the divorce decree authorizing the lease, they were not obligations which plaintiff had assumed. Plaintiff also denied defendant's right to deduct certain decorating expenses from the rent

due her. Irrespective of the propriety of these deductions, however, defendant's default in the payment of any rent for eight months after it was due, constituted a breach of a major covenant of the lease.

Defendant contends, however, that plaintiff waived the default by accepting the check for $145 in August 1949, and that the lease required a demand and failure to pay before there could be a forfeiture for nonpayment of rent. It is uncontroverted that plaintiff did not cash the check, and the possession of it by her attorney pending the outcome of the litigation would not constitute a waiver of the breach of the covenant.

The lease provided that if default shall be made in the payment of rent, or any part thereof, it shall be lawful for the party of the first part to repossess and re-enter the premises with or without process of law, and that no demand shall be necessary on the day the rent is due, but a demand and refusal at any time shall be sufficient, and after such default the party of the second part shall be guilty of forcible detainer. Inasmuch as the defendant lessee is also a co-tenant, he could not be proceeded against for unlawful detainer, since he is entitled to remain in possession (Freeman, "Co-tenancy and Partition," 383), plaintiff, however, did question the existence of the lease in her partition complaint which was filed four months after the rent was due, and which sought a determination of the interest of the parties in the premises. Plaintiff at no time waived defendant's failure to pay the rent, and objected to the erroneous accounting, filed some four months late and designating an insufficient sum due as rent. Therefore, if she did not make a demand on the date the rent was due, there was a demand and claim of forfeiture "on a subsequent day."

Furthermore, in April 1949, defendant cut off the electricity to the cottage where plaintiff resided under

194

the terms of the lease. In addition to the fact that the divorce proceedings which ordered the execution of the lease specifically referred to defendant's providing plaintiff with electricity in the cottage, it is established that electric service, where furnished under a lease, is appurtenant to it, even though not mentioned in the terms of the lease. (*Parish v. Vance,* 110 Ill. App. 50; *Jarvis v. Seele Milling Co.,* 173 Ill. 192, 195.) This service had been furnished at the time the lease was executed, and thereafter, without any objection by defendant, and was necessary for the enjoyment and use of the small cottage. In June 1949, she made a demand for such service, which defendant refused.

Defendant claims that he cut off the electricity because plaintiff's second husband was then living in the cottage, contrary to the terms of the lease. If defendant had considered this a breach of the lease, he should have instituted appropriate proceedings questioning plaintiff's rights thereunder as plaintiff had done, rather than attempt a retaliatory breach of covenant. Therefore, if the lease had not been cancelled at the time plaintiff filed her partition proceedings, by reason of defendant's breach of the covenants, it clearly was forfeited at the time of the hearing, by reason of defendant's subsequent conduct in default of the provisions of the lease. It is our judgment, therefore, that the circuit court erred in concluding in the order of sale that the lease was still in effect.

Moreover, even if the lease were deemed to be still in existence, the circuit court erred in finding that it covered the entire premises. It is uncontroverted that Katherine K. Smythe owned and conveyed to the bank merely an undivided half interest in the farm property, and that this was perforce the only interest which could be leased by the bank at her direction, ir-

respective of the description covering the entire premises. (*Thomas v. Farr*, 380 Ill. 429.)

In Tiffany, "Real Property," 452, it is stated: "Conveyance by a tenant in common of the entire premises is effective to convey his undivided interest only." In *Hill v. Reno*, 112 Ill. 154, the court stated: "If the lessors be co-parceners, or tenants in common, the lease operates as the separate demise of each and must be so treated, and this is the well recognized doctrine on the subject."

█ With reference to the propriety of the division of the proceeds of the sale of the property ordered by the circuit court, it is elementary that a partition decree must not only set forth the rights, title and interests of all the parties, but so direct partition as to "conserve their respective interests" under leases and agreements affecting the partition. (*Arnold v. Arnold*, 308 Ill. 365, 370; *Brown v. Sunderland*, 251 Ill. 523.)

█ In the instant case, the lease was entered at the direction of the divorce court, as an integral part of a property settlement approved by that court, designed to afford plaintiff with a home and income, furniture, electricity, and some food from the farm. The fact that plaintiff was to be furnished these items by defendant entered into the determination of the rent set by the court to be paid under the lease, and was part of the consideration for the execution of the lease. Under these circumstances, the court, in decreeing that partition should be made subject to the lease, should have taken cognizance of that divorce decree in determining the distribution of the proceeds of the sale of the property.

However, even if this court were to sustain defendant's contention that the rights of the parties were determined exclusively by the lease, it is apparent that the circuit court's instructions for sale do not

protect plaintiff's rights under the lease, or equalize them with those of defendant Smythe. According to the report of the commissioners, if the property is sold subject to the lease, it is valued at $28,000, whereas if it is sold without reference to the lease it is worth $35,500. Inasmuch as the decree provides that the parties may bid at the sale and apply their undivided half interest as part of the purchase price, if defendant Smythe buys the property, offered subject to the lease, he would not only acquire the reversionary interest of plaintiff, but since he is the lessee, there would be a merger of the interests and he would get a fee. Thus, he would no longer be obliged to pay rent, and at the same time would have acquired the entire property free of any incumberance, and at the lower price. Under these circumstances, plaintiff would not only have lost her right to the rent, but would be compelled to accept half of the proceeds from the lesser sale price since the property was being sold subject to the lease.

Similarly, if a stranger buys the premises subject to the lease, defendant Smythe not only acquires the same amount of the proceeds of the sale as the plaintiff, but maintains additional valuable rights as lessee. Therefore, it is obvious that if the property were to be sold subject to the lease, the decree of partition must give effect to the different values of the shares, since plaintiff's share is leased, and defendant's is not. The decree should reflect that plaintiff must be compensated for the loss of rent by a greater interest in the proceeds, particularly if the premises are to be purchased by the defendant Smythe.

Such a procedure would be no novel innovation in a partition proceeding, but merely a compliance with a recognized practice and rule of law adhering in such situations. (*Thomas v. Farr, supra,* and cases cited therein.)

197

In *Thomas v. Farr, supra,* the court stated:

"Where a lease exists upon a moiety, both the lessee and the reversioner have an interest in such share, but by reason of the lease the interest of the co-tenant upon whose share it exists may be of more or less value than that of the other co-tenants whose shares are not leased. In case of the sale of the property subject to the lease, the purchaser acquires the reversion of the co-tenant whose share is under lease and the fee of those not leased, but the interest of the lessee remains in effect. Therefore, the proceeds of the property sold subject to a lease must be distributed upon equitable principles so each co-tenant receives his fair share thereof. . . . Whatever may be the value of the separate moieties, that must be ascertained and the proceeds distributed after the effect of the lease upon the value of such co-tenant's share has been ascertained, whether it may increase or decrease the value thereof."

The failure of the circuit court herein to direct any such disposition protecting plaintiff's rights in the decree directing a sale of the property subject to the lease, therefore, constituted error.

The order of the court for the equal division of fees between plaintiff's and defendant's attorneys was proper, inasmuch as plaintiff has a sufficient title to maintain the partition proceedings, and the rights of the parties are properly set forth in the complaint, and further, since defendant has not interposed a defense to the complaint. On the contrary, defendant is equally desirous of a partition of the premises, and having his interest determined in this proceeding.

On the basis of our analysis of this cause it appears that defendant endeavored by a concerted plan, involving the breach of major covenants of the lease, to cause his former wife to abandon the small cottage on the farm of which they were co-tenants, which residence

was granted her under the lease ordered by the divorce court. However, inasmuch as the existence of the lease is financially advantageous to him in this partition proceeding, defendant is insisting that the lease be in full force and effect, and at the same time attempts to deprive plaintiff of the benefits of the instrument. It is our judgment that the lease was cancelled by the various breaches of covenant, and that the property should be sold free of that incumberance at the higher valuation. Under those circumstances, the rights of the parties will be protected by an equal division of the proceeds of the sale in accordance with their respective undivided half interests in the premises.

To the extent that plaintiff's rights under the divorce decree may be affected by the sale of the premises, it is suggested that the proper remedy for any adjustment thereof, would be in a proceeding for a modification of that decree.

Inasmuch as this court has concluded that the circuit court erred in ordering the sale of the premises subject to the lease, in finding that the lease covered the entire premises, and in directing that the proceeds from the sale of the property subject to the lease be divided equally between the plaintiff and defendant Smythe, the decree entered by that court should properly be reversed, and the cause remanded with directions to proceed in accordance with the views expressed herein.

*Judgment reversed and remanded with directions.*