### JOHN SCOTT, Jr.

### *v.*

### WILLIAM SCOTT.

*Opinion filed October 24, 1901.*

1. WILLS—*when fact of advancements and amounts must be established by extrinsic evidence.* Under a will providing that "whatever notes and unsettled accounts I may hold at the time of my death against my son William shall be considered as advancements to him," etc., the fact of the existence of such notes and accounts, and amounts thereof, must be established by competent evidence before they can be charged as advancements to the son.

2. EVIDENCE—*when declarations of testator as to advancements are not admissible.* Where a will does not specify what notes or accounts, or the amounts thereof, are to be deducted from a son's share as advancements, but merely states that whatever notes and unsettled accounts the testator holds against his son at the time of his death shall be so considered, declarations of the testator made to his attorney and others who were present when the will was made, but not in the presence of the son, as to the amount of such notes and accounts, are not admissible; nor can they be considered competent as part of the *res gestæ.*

3. SAME—*when presumption that a son destroyed evidence of advancements cannot arise.* Evidence that a son had possession of his father's papers shortly after his death and deposited them in a bank does not give rise to a presumption that he destroyed or suppressed notes and books showing amounts advanced to him by his father, where there is no competent evidence showing that such notes and books existed.

WRIT OF ERROR to the Circuit Court of Henry county; the Hon. HIRAM BIGELOW, Judge, presiding.

WILLIAM LAWSON, for plaintiff in error.

WILSON & MOORE, and N. F. ANDERSON, for defendant in error.

Mr. JUSTICE CARTER delivered the opinion of the court:

This writ of error was sued out to reverse a decree of partition rendered by the circuit court of Henry county. The parties claim title under the will of their father,

John Scott, who died June 27, 1887, owning the land in controversy, a farm of 371 acres, situated in said county. The will was admitted to probate July 9, 1887, and letters testamentary were thereupon issued to James C. Smiley, as executor. The use and income of this land were given by the will to Marcy Scott, the testator's widow, during her life. After making other bequests and devises the will provided:

"*Seventh*—After the death of my said wife I give and devise my farm in Kewanee township, aforesaid, to my sons, Alexander, William and John, provided, however, that whatever notes and unsettled accounts I may hold at the time of my death against my said son William shall be considered as advancements to him and deducted from his share of said farm, but shall not be reckoned at all against his share in my personal estate above bequeathed to him."

The widow died in August, 1898, and this bill was filed about a month later by John Scott, Jr., one of the devisees, for a partition of the farm. Alexander Scott, one of the devisees, died after the death of his father, and devised his share of said lands to his widow, Sarah E. Scott, during her life, with remainder in fee to his daughter, Luella Keezler.

William Scott denied that his father held any note, notes or account against him, and no such note or account was produced or found after the testator's death, although the executor searched and inquired of the widow for them but learned nothing regarding them; no such note or account was included in the inventory, and it does not appear that any legal proceedings were taken by the executor, or any person interested in the estate, during its administration or during the lifetime of the widow, nor until this bill was filed, to establish the existence or the loss or destruction of any such note, notes or account. The widow lived eleven years after the testator's death. It is to be observed that the will itself

does not determine the existence, at the testator's death, of any such notes or accounts which were to be charged as advancements to William, but left that fact to be established by proof *aliunde.* It was therefore necessary to establish by competent evidence that the testator held such notes or accounts at his death, and the amount of them, before they could be charged as advancements to William. An effort was made to do this on the trial of this case, but the court below sustained exceptions to the master's report, and found by the decree that William Scott was not indebted to his father, the testator, in any sum whatever, at the time of the father's death, and that his distributive share cannot be charged with any such indebtedness. Interpreting this as a finding that the testator did not, at his death, have or hold any note, notes or unsettled account against his son William, we are constrained, after a full consideration of the competent evidence in the record, to sustain the finding. The burden was on the complainant to establish such note or notes and accounts, and their amount; but this burden was not sustained.

It was proved before the master by the attorney and others who were present when the will was executed by the testator, about twelve hours before he died, that he spoke of his transactions with William and the money he had let William have, and said that he had William's note for $6500, and that there was something on the books, but he did not know how much. This testimony was incompetent and was properly disregarded by the chancellor. The testator could by his will have deducted that amount, or any other he might have deemed just, from what might have been supposed to be William's share in the estate, but as he did not do so by the will it can not be done by the courts upon the mere declaration of the testator made at the time the will was executed. The question here is not whether the will may be varied by parol evidence, but, conceding that the will itself has

left the fact that the testator held such note or notes and accounts to be established by parol, the question is whether the declarations of the testator, made when the will was executed, that he had such a note and account, may be proved to establish such fact. We are of the opinion they were not admissible, but were incompetent. William Scott was not present, and his rights under the will, fixed by the death of his father, could not be affected by proof of such declarations. The fact necessary to be established, that the testator held such note and account, could be proved only by competent evidence, as in other cases. It could not be contended, in a suit by the executor to recover an indebtedness evidenced by such a note or account, that the declarations of the payee or creditor would be admissible in favor of the estate. Upon the same principle they are not admissible here to charge the devisee.

It is contended, however, that these declarations of the testator were a part of the *res gestœ,* and therefore admissible. We are of a different opinion. The declarations were of the principal fact that he had such a note, and were not merely incidental to or explanatory of such principal fact. No note or account was present at the time of the execution of the will, and the declarations then made did not tend to identify them or to characterize his possession of them. Nor were they offered to explain any latent ambiguity arising from an interpretation of the will in relation to its application to the subject matter of it, but they were offered as original evidence of the principal fact, which, it must be assumed from the will, the testator left to be established according to the rules of evidence. (2 Jones on Evidence, sec. 354; *Charter* v. *Lane,* 62 Conn. 121; *Abney* v. *Kingsland,* 10 Ala. 355; 44 Am. Dec. 491, and notes.) See, also, *Martin* v. *Martin,* 174 Ill. 371, where it was shown that the holder of a note had the possession of it, and it was held proper to prove declarations by her, relating to such possession, claiming

ownership of the note, but not such as related to past transactions.

Sarah E. Scott also testified that about seventeen years before the trial, when she and her husband, Alexander Scott, were living with the testator and his wife on the farm, the testator called her into the room where he had a lot of notes, and when he came to the eleventh one he read it as and said it was a note for $6500 against William; that she saw the note and the signature to it, and that it was written for $6500, but that she did not know William's handwriting. She did not testify whether William's name was signed to the note or not. William Scott testified that his father did not hold any note or account against him at the time of his death. There was evidence tending to prove that shortly after the death of his father William obtained possession of his father's notes and papers and deposited them in a bank, and counsel for plaintiff in error contends that from that fact, and the other evidence in the case, it should be presumed that he destroyed or suppressed the note and book showing the account against him. As there was not, in our opinion, sufficient competent evidence in the record to prove that the testator held any note or book account against William Scott at the time of his death, the chancellor would not have been warranted in finding that said William had suppressed or destroyed any such note or account. It does not appear from the record that the facts bearing upon the question at issue were fully elicited, and the chancellor could not supply by inference that which it was necessary to establish by proof. The most that can be said is, that the competent evidence in the record on behalf of plaintiff in error is too indefinite and inconclusive to sustain the finding of the master, or any decree other than the one rendered on the hearing.

The decree will be affirmed.          *Decree affirmed.*