ROBERT J. MARKS, Plaintiff-Appellee, v. CLAIRE T. MARKS, Defendant-Appellant.

(No. 71-268;

Fifth District—October 23, 1972.

Dixon & McDonnell, of Belleville, (Joseph B. McDonnell, of counsel,) for appellant.

Jones, Ottesen & Fleming, of Belleville, for appellee.

Mr. PRESIDING JUSTICE GEORGE J. MORAN delivered the opinion of the court:

Defendant appeals from a judgment of the Circuit Court of St. Clair County granting a divorce to her husband, plaintiff-appellee, on the grounds of mental cruelty. Plaintiff cross-appeals from an award of alimony and child support in favor of defendant. Because of the result we reach, it will not be necessary to consider plaintiff's cross-appeal.

The issue presented for review is whether the evidence was sufficient to justify the finding that defendant was guilty of extreme and repeated mental cruelty.

Plaintiff and defendant were married on June 19, 1954. Two children, both boys, were born of the marriage. Plaintiff was a career serviceman with the United States Air Force and the family lived together at various bases until plaintiff received orders to go to Thailand in June, 1968. Prior to this assignment, plaintiff had been stationed at Scott Air Force Base in St. Clair County, Illinois, since the summer of 1966, and he and his wife and two children lived on the base.

Beginning in October, 1967, plaintiff and defendant argued frequently. Plaintiff testified that they argued three or four times a week. When asked what the arguments were about, plaintiff stated: "About my being out, and at times wanting to go out to office parties, and going to office parties and coming in late."

Plaintiff further stated that in connection with his work at the office of the Military Command Headquarters at Scott, he attended "certain social events" from time to time; that his wife went with him only once during the period from October, 1967 to June, 1968; and that on other occasions when he asked her to go, "She said it would just be a drinking party and she didn't want to go."

Plaintiff admitted that he and his wife had "a fairly good marriage" until October of 1967. At that time, after they began to argue, plaintiff asked his wife for a divorce, but he gave her no reason for wanting a divorce. He admitted at the trial that he had been going out with a secretary at the base who worked in the same unit. When asked whether he had been with the secretary at a tavern in Swansea, Illinois in April of 1968, he replied: "I don't recall if it was April of 1968. I don't recall."

Shortly after plaintiff asked his wife for a divorce, the two of them attended a wedding and, according to the defendant, plaintiff "got very drunk" and threatened to leave the defendant if she did not give him the keys to the car. After that, she was never invited to go out with her husband.

Defendant testified that the quarrels which started in October of 1967 were about "another woman". She testified that the plaintiff "would stay out when he promised the children he would be home, and he never came home and I was upset and there were arguments." On one occasion, plaintiff had returned home at 3:00 A.M. "and had been drinking and he said they were out in couples, so I knew who he was out with. I got very upset and there was an argument and I was hit in the ear * * *." On another occasion, according to the defendant, plaintiff had come home late and had left again and defendant later discovered that their savings bonds had been taken. The plaintiff returned home again at 3:00 A.M. and another argument developed. Plaintiff admitted that he had been out late that night and that the argument was probably over his coming in late. He further admitted that he had cashed the savings bonds either that day or sometime during that period. Although plaintiff stated that defendant had struck him with a rolling pin, he admitted that he also struck his wife and that she had called the air police and was later taken to a base hospital.

Before plaintiff left for overseas in July, 1968, he drove his wife and the two boys to New Jersey, where the defendant's parents lived. Defendant testified that she wanted to stay in Illinois with the boys until the Little League baseball season was over, but that her husband insisted on taking as soon as the boys' school was over, saying, "I want to get rid of you." Plaintiff "did not recall" his wife requesting that they be allowed to stay and "did not recall" making the statement attributed to him, although he admitted that the boys were playing Little League baseball and that their season had begun before he drove the family to New Jersey.

Plaintiff saw his wife and children only once after that, for two days after he returned from Thailand in July, 1969. He stated he had no intention of resuming his married life with defendant after he had taken her and the boys to New Jersey.

■■■ It is generally recognized that in order to establish mental cruelty as a grounds for divorce, the conduct of the defendant must be such as to cause embarrassment, humiliation and anguish to the opposite spouse or to cause the opposite spouse's life or personal health to be endangered. *Howison v. Howison*, 128 Ill.App.2d 377; *Stanard v. Stanard*, 108 Ill.App.2d 240.

In our opinion, the evidence in this case was insufficient to warrant a divorce based upon extreme and repeated mental cruelty. Therefore, the judgment of the Circuit Court of St. Clair County is reversed.

Judgment reversed.

EBERSPACHER and JONES, JJ., concur.