DONALD MCCARREL, Plaintiff and Counterdefendant-Appellee, *v.* CAROL I. MCCARREL, Defendant and Counterclaimant-Appellant.

(No. 12058;

Fourth District—March 28, 1974.

Lewis, Blickhan, Garrison & Tucker, of Quincy, for appellant.

A. W. Schimmel, Sr., of Schimmel & Schimmel, of Pittsfield, and Edward F. Casey, of Casey & Casey, of Springfield, for appellee.

Mr. JUSTICE KASSERMAN delivered the opinion of the court:

Defendant-counterclaimant Carol I. McCarrel prosecutes this appeal from the entry of a decree of divorce in which the court granted a divorce to the plaintiff-counterdefendant Donald McCarrel on his complaint for divorce and denied the relief prayed for by appellant in her counterclaim for divorce.

In his complaint, appellee charged appellant with mental cruelty, alleging five specific acts as follows: (1) that appellant continually uses amphetamines which cause her to be in a constant state of euphoria, thereby giving her a feeling she is extremely rich and should unnecessarily spend great amounts of money; (2) that she drinks alcoholic liquors to magnify the use of such "pep" pills; (3) that she has for a long time accused appellee of being mentally unbalanced, has locked him out of their home, and at times has physically beaten him; (4) that she has locked the home and stayed at a motel overnight drinking and taking "pep" pills; and (5) that in the presence of several employees under his supervision, she demanded $40, shouted and made a big scene

and told persons that if appellee did not pay her, she would pack his clothes, take them to a hotel, and have him arrested if he came home, and that she poured a can of mace on him when he came to the home, telling appellee he could not remove his clothes, and seriously damaging his eyes. Further, appellee alleges that he gave appellant no cause or provocation for such mentally cruel acts.

Appellant in her counterclaim for divorce alleged that appellee was mentally cruel to her in one or more of the following ways: (1) he repeatedly used alcoholic beverages to excess; (2) he used alcoholic beverages to such excess that he has taken medical and psychiatric treatment on three separate occasions; (3) he physically beat her with such force and violence that in May 1969 she received a fractured jaw and in October 1969, a wound requiring eight stitches; (4) he refused to properly support her; and (5) he berated and swore at her and used vile and abusive language in the presence of herself, her children and her relatives. Appellant further claims that she gave appellee no cause or provocation for such mental cruelty; and she specifically alleges joint ownership with appellee in a house and lot in Hull, Illinois, worth $8000, and an equity interest in a contract for deed on the sale of farm-land to Mr. and Mrs. William Rice. She alleged further that she is un-employed, that she needs support for herself temporarily and perma-nently, she has no money to pay attorney fees and costs and that appellee is employed and able to pay such support, attorney fees and costs. In her counterclaim, appellant prays for divorce, temporary and permanent alimony and attorney fees, and that the property of the parties be di-vided in such manner as the court deems fair and equitable.

The evidence indicates that the parties resided together since about Thanksgiving of 1965 and that they were married in Troy, Missouri, on September 3, 1968. There is evidence that the appellee considered ap-pellant to be a very attractive person and good company, and that he got along with her beautifully. Before her marriage, Mrs. McCarrel worked for a publisher in Missouri earning $55 per week after deduc-tions. This employment terminated when Mr. McCarrel called her em-ployer and gave notice that Mrs. McCarrel would no longer be working there, stating that he needed her worse than they did. According to the testimony of Mr. McCarrel, appellant could never hold a job and she hadn't made enough money to even pay for her own perfume any time in her life. The evidence indicates Mr. McCarrel's marriage to Mrs. McCarrel was his third and that Mrs. McCarrel had been married at least once previously. There is evidence that Mr. McCarrel was arrested in Troy, Missouri, before the parties were married and that the arrest was a result of Mr. McCarrel being inebriated. According to the testi-

mony of Mrs. McCarrel, after the marriage of the parties, there were several instances in which Mr. McCarrel physically abused her. She testified that sometime near Thanksgiving, 1968, Mr. McCarrel beat her on the arms and face, pulled her hair and choked her to the point of her blacking out, all while he used abusive language toward her. There is further evidence that he was arrested on the Friday after Thanksgiving, 1968, as a result of an altercation with Mrs. McCarrel and that he abused her on Christmas Day, 1968. The testimony further indicates that on a Friday early in March of 1969, Mr. McCarrel had been drinking and was arrested on a complaint by the sheriff's deputy, that he was held over the weekend and appeared before Judge Paul R. Durr, who continued the case at that time, and that nothing has been done with the case since then up to the time of the trial in this cause. The evidence indicates that the McCarrels continued to have difficulties after the arrest of Mr. McCarrel in March 1969, and Mrs. McCarrel testified that on May 4, 1969, while she was in the kitchen preparing dinner, without provocation, Mr. McCarrel came after her and hit her with his fist on the right side of her face, fracturing her left jaw and breaking her front tooth. She testified further than when her husband refused to take her to the hospital, she drove herself to the hospital and was treated by Dr. Green, who wired her jaw. Mr. McCarrel's version of this instance is that the two had been arguing for 2 or 3 days, that he hadn't slept, that he had been working extra time, that he was distressed and upset, and "it just happened." He testified that he never felt so low in his life, and that he knew it was very painful to her, and that "she was a very good sport about it." Debra Herron, Mrs. McCarrel's 15-year-old daughter, testified that she saw the jaw-breaking incident, and that she heard no arguing and that her mother had done nothing to provoke her stepfather. Miss Herron further testified that Mr. McCarrel appeared to be drunk and Mr. McCarrel later admitted in his testimony that he was inebriated on this occasion. Subsequently, in October 1969, Mr. McCarrel was intoxicated and when Mrs. McCarrel was setting the table he hit her over the head with two melmac dinner plates. Mrs. McCarrel testified that her husband again refused to take her to the hospital and she drove herself to the hospital, where a Dr. Roller treated the wound that required stitches and left scars which are still on her head. There is evidence of another incident which occurred in January 1969, in which Mrs. McCarrel had a prepared meal on the stove ready for the table and Mr. McCarrel came home drunk, dumped the food in the middle of the floor and took her best nightgown and pushed it into the food he had dumped on the floor. There is evidence of Mr. McCarrel refusing to give his wife money to buy necessities, and on one occasion Mr. Mc-

Carrel refused to give money to his wife to buy a car license and that she had no money to live on. Mrs. McCarrel further testified that she decided not to continue to live with her husband even if she were required to accept welfare; consequently, she set his clothes outside the house and locked all the doors. Two days later, she testified, when Mr. McCarrel was drunk, he broke open the front door, broke the latches on the back door, tore the telephone out of the home and attempted to abuse Mrs. McCarrel. Mrs. McCarrel testified that at that point she used a small vial of mace on him. Mr. McCarrel's version of this incident was that Mrs. McCarrel became very abusive and "hateful" toward him, that she told him to get out, and that he forbade her to throw his clothes out on the street. He testified further than when he later went to the parties' home to prevent his eviction the defendant sprayed mace on him and forced him to leave.

Appellee testified in rebuttal that appellant on occasions would threaten to resume a relationship with Dr. Roller; however, such evidence could not be considered as supporting the award of a divorce to appellee because it was not alleged in the complaint. It must, therefore, be considered as supporting appellee's contention that there was provocation for his treatment of his wife.

The evidence, so far as it concerns the property assets of the parties, indicates that Mr. McCarrel had made a financial statement to a bank on September 2, 1970, indicating that he had total assets of $106,700; total obligations of $22,000; and a net worth of $84,700. This financial statement has been admitted into evidence; and although Mr. McCarrel testified that he could not remember having made such statement, he claimed that it was not correct. The record indicates, however, that earlier counsel for both parties entered into a stipulation that he had made the financial statement. The assets of the parties include a written contract for deed for the sale of a farm by Mr. and Mrs. McCarrel as sellers to Mr. and Mrs. Bill Rice as buyers. The sale price was to be paid in 20 annual installments of $3960 each, and the contract provided that the Rices were to convey a house in Hull, Illinois, valued at $8000, to Mr. and Mrs. McCarrel as part of the purchase price. The evidence indicates that the first payment was made in January 1970; the second payment was made in January 1971; and the January 1972 payment has not been made in accordance with the contract. Further, the evidence indicates that Mr. and Mrs. Rice have not conveyed the house to Mr. and Mrs. McCarrel as specified in the contract for deed.

Appellant further contends that the evidence indicates that the charges which were instituted against Mr. McCarrel in March 1969, in which Mr. McCarrel subsequently appeared before Judge Durr, had not been

disposed of at the time of trial, and that this indicates that the trial judge was prejudiced. Her counsel made an oral motion for a change of venue to another judge at the close of the day that this evidence was presented; however, the presiding judge denied the motion on the grounds that the same was filed too late.

The decree for divorce found that the appellant was guilty of extreme and repeated mental cruelty as alleged in the complaint; that the appellee was entitled to a divorce; and that appellant's counterclaim was not proven. The prayer of appellant's counterclaim was denied. The decree awarded appellee a divorce from appellant, found appellant to have no interest in any of the real estate owned by the appellee nor in any of the household goods or furniture in the home of appellee in which she was then living nor in any stocks, bonds, bank accounts or contracts which appellee owns. The decree specified that appellant shall have no interest in the contract for sale of real estate between appellee and William and Louella Rice dated March 6, 1969. The decree further provided that Mrs. McCarrel shall vacate the premises of Mr. McCarrel in which she was living and shall surrender to Mr. McCarrel said home and all furniture and household goods within 30 days of the date of the decree. The decree ordered the appellee to pay court costs and the sum of $3500 to appellant as a complete and full property settlement of her marital rights. The decree found that appellee shall not be required to pay any alimony. The decree also ordered the appellee to pay the balance of appellant's attorney fees and ordered appellant to pay all bills which are unpaid at the time and which were owed by the appellee and appellant, except the telephone bill which appellee had offered to pay. Subsequently, appellant filed a post-trial motion praying that the decree of divorce be vacated and that a decree of divorce be entered in her favor and against the appellee, or that said decree be vacated and that the order denying the motion for change of venue be vacated. In the alternative, she prayed that the motion for a change of venue be sustained and that a retrial of the case be held before another judge or that the decree be vacated and that a retrial be held before the Honorable Paul R. Durr. As a further and alternative prayer in said motion, appellant prays that said decree be modified to provide that she would have one-half of all right, title and interest in the real estate contract whereby the parties sold real estate to Mr. and Mrs. Rice, that she have all the household furnishings and furniture, that she be awarded the marital home occupied by the parties or at least a one-half interest in said home. She further prayed that she be awarded alimony in the sum of $90 per week or such other sum as the court deem fair and equitable, that appellee be required to pay all her costs and attorney fees and that

appellee be ordered to pay all debts incurred by the parties up to the date of filing of said motion.

Appellant appealed from the decree of divorce, from the order of the trial court in denying the post-trial motion and from the order denying the motion for a change of venue. The relief sought in this appeal is substantially identical to the relief sought in her post-trial motion.

An examination of the evidence indicates that appellee has failed to establish any of the grounds for divorce as alleged in his complaint. Of the five grounds for divorce specified in his complaint, there is no evidence to support any of the allegations except: (1) appellant has locked appellee out of the house; (2) that on February 18, 1971, appellant went to appellee's place of employment and demanded money; (3) appellant used mace on appellee when he came home after work. Contrasted to such evidence is the further evidence in the record indicating that appellee was locked out of the house only when he threatened bodily harm to appellant or when he abused her; that if in fact she did go to appellee's place of employment and request money, she was not abusive and did not create a scene; and that appellant used mace on appellee only after he disregarded her warning to leave her alone.

■■ In a divorce proceeding, the evidence and allegations in the complaint must substantially agree to support a decree for divorce. In *Field v. Field*, 319 Ill. 268, 149 N.E. 757, the court stated that if the allegations are not established by the proof, or if the proof establishes a state of fact not alleged in the bill, and no amendment to the bill to correspond with the proof is made, the bill must be dismissed. The court there stated further, that while it is not necessary to prove all of the acts charged, it is essential that the proof correspond with the specific allegations and that some of the specific acts of cruelty charged be proven. A further essential element of proof to be established in an action for divorce is to prove that there was a lack of provocation for the alleged acts of the defendant. (*Stanard v. Stanard*, 108 Ill.App.2d 240, 247 N.E.2d 438.) In the case at hand, it is our opinion that the evidence fails to establish any of the charges contained in appellee's complaint and that the decree for divorce entered in the trial court is against the manifest weight of the evidence.

■■ Further, it is our opinion that the trial court committed reversible error in denying appellant's counterclaim for divorce. It may be argued that the physical violence of the appellee was provoked by appellant's belittling of his sexual activities and her threats to resume an affair with another man. The fact remains that by his own admission, appellee was guilty of breaking appellant's jaw on one occasion and later of inflicting an injury to her head which required several stitches. While the trial

court may have believed that these two incidents were the result of provocation on the part of appellant, it is our opinion that they were unreasonably out of proportion to the provocation.

Accordingly, the decision of the circuit court granting a divorce to appellee and denying appellant's counterclaim for divorce is reversed and this cause is remanded with instructions to enter a judgment in favor of appellant and against appellee on appellee's complaint for divorce and for a new trial on appellant's counterclaim for divorce.

Reversed and remanded with directions.

SMITH, P. J., and SIMKINS, J., concur.