KURT ROSENBAUM, Plaintiff-Appellee, *v.* JEAN ROSENBAUM, Defendant-Appellant.

First District (2nd Division) No. 60327

Opinion filed January 30, 1976.—Opinion modified and supplemental opinion filed upon denial of rehearing September 30, 1976.

Jean Rosenbaum, of Chicago, for appellant, *pro se*.

4

Schiller & Schiller, and Levin, Novoselsky, Zwirn & Gallagher, both of Chicago (Henry N. Novoselsky, of counsel), for appellee.

Mr. JUSTICE LEIGHTON [1] delivered the opinion of the court as modified upon denial of petition for rehearing:

This appeal is the product of a long and bitter marital dispute between the plaintiff, Dr. Kurt Rosenbaum, and his wife, the defendant, Mrs. Jean Rosenbaum. The case before us, although begun by Dr. Rosenbaum as a suit for partition of their home, was later amended to include a count for divorce on the ground that his wife was guilty of mental cruelty. Then, after pretrial motions and amendment of the two-count complaint, the trial court heard evidence, entered a judgment that granted Dr. Rosenbaum a divorce, and ordered that the home be sold subject to a schedule of disbursements. Jurisdiction of the cause was retained to enable the court to determine the attorney fees to be paid for completion of the partition and to enforce the terms of the divorce judgment.

Thereafter, Mrs. Rosenbaum appeared in court with counsel and requested leave to file and personally argue a post-trial motion that she had prepared. The request was granted; but her lawyer insisted and the court allowed him to withdraw from the case. She argued the motion, but it was denied. Since then, she has acted as her own counsel in these proceedings. She prepared and filed the notice of appeal, later amended it, designated the contents of the record and docketed it in this court, and has submitted an appellant's brief that presents and argues a multitude of issues. Two of them are determinative, however, so that their resolution is dispositive of this appeal. They are (1) whether the judgment that granted Dr. Rosenbaum a divorce on the grounds of mental cruelty was contrary to the manifest weight of the evidence; and (2) whether the judgment for divorce includes or can be construed to include a valid partition judgment. The following are the facts that give rise to these issues.

I.

Dr. and Mrs. Rosenbaum were married in Chicago on June 17, 1948. They became the parents of three children, Jay and Richard, sons who are now 26 and 24 years of age, respectively; Jody, a daughter who is now 21 years old. Dr. Rosenbaum is an optometrist who, since his marriage, has had his offices and place of business in the southeast side of

---

[1] Mr. Justice Leighton, who delivered the opinion of the court, resigned from the court effective at the close of business on 26 February 1976, in order to accept appointment as a Federal District Court Judge. For the purpose of considering the petition for rehearing, Mr. Justice Hayes was assigned to replace Mr. Justice Leighton, and he wrote the modified portion (Part V) of this opinion.

Chicago. Mrs. Rosenbaum is a substitute part-time teacher in the Chicago school system. In the early days of their marriage, they lived in several small rented apartments in the city; but in 1965, they were living at 2841 West Gregory Street where, progressively, intense domestic discord characterized their relation. On October 15, 1965, Dr. Rosenbaum left his wife and three children. Almost two years later, on August 15, 1967, he filed a suit for divorce in which he charged her with extreme and repeated mental cruelty. He alleged that from the date of their marriage, he had always been a good, true, and affectionate husband; and that since leaving his wife, he lived separate from her as a single man, without fault on his part. Mrs. Rosenbaum answered these allegations and denied them. A trial followed on September 10, 1968; and after hearing the evidence, the court found that Dr. Rosenbaum "* * * failed to prove a case and does not have grounds for divorce." His prayer for relief was denied.

He did not return to the family home. Instead, he continued his separate residence and pursued his profession at a southeast-side Chicago address some 18 miles from his wife and three children. When problems concerning the family arose, Dr. Rosenbaum travelled that distance or went from his home to help solve them. But in September 1969, Jody, who was then 15 years old, left home without Mrs. Rosenbaum's knowledge or permission and her father arranged for her to stay in the home of another family. A dispute about this arose; and in the midst of it, Mrs. Rosenbaum complained to juvenile authorities who took Jody into custody. Later, a juvenile court judge ruled that she could live with her father; and as a result, she left the family home. By the end of the year, the two boys left their mother and took up residence with their father.

Then, on January 13, 1971, Dr. Rosenbaum filed the partition suit in this case. Motions and the amending of pleadings consumed a year and nine months when, on September 10, 1972, he moved for and was granted leave to file an amended complaint that contained a count charging his wife with extreme and repeated mental cruelty. He alleged, as he had in his first divorce suit, that from the date of his marriage he had been a good, true and affectionate husband; and that since October 15, 1965, he had lived as a single man, without fault on his part. The count contained subparagraphs which purported to allege the acts of mental cruelty relied on for the divorce. Mrs. Rosenbaum moved to dismiss because the allegations of mental cruelty were vague, uncertain and lacking in specifics. Her motion was sustained with plaintiff given leave to file a second amended complaint.

This leave was complied with, and the acts of mental cruelty were alleged in greater detail. Mrs. Rosenbaum answered and denied the

material allegations of the divorce count; and as to the acts which her husband claimed were mental cruelty, she made affirmative allegations which purported to explain her conduct. The second amended complaint in two counts and the answer were the pleadings in the case when it was called for trial. Evidence was heard; and after listening to the arguments of counsel, the trial court ordered the parties to file briefs. They did so; and thereafter, on February 20, 1974, the trial court entered a judgment for divorce in which it concluded that Mrs. Rosenbaum was guilty of extreme and repeated mental cruelty and that the home of the parties had to be sold.

## II.

The following are the acts of his wife which Dr. Rosenbaum claimed caused him mental cruelty. They were alleged in seven subparagraphs of his second amended complaint.

"From the summer of 1969 to the date of the allegations, she constantly interfered with his work as an optometrist by calling his office on the telephone in rapid succession, or by appearing there and refusing to leave so that he could not deal with his patients. This conduct was almost daily in the summer of 1969, and most frequent in the months of July and August in the years 1970, 1971 and 1972.

She followed him wherever he went. On November 3, 1971, she rented a car for the purpose of following him throughout the day. Further, almost every Wednesday during the summer of the years 1970, 1971 and 1972, she went to the tennis courts where he played tennis and demanded of the management and of other members of the club that she be permitted to participate since she was his wife. She went to other persons at the tennis courts and introduced herself as his wife, without any reason, causing him great embarrassment. On October 29, 1970, she went to a party to which she was not invited and berated the hosts for not inviting her. This kind of conduct repeated itself in the fall of 1969 and 1970.

In July of 1969, he took his teenage daughter and her girl-friend for a weekend at a resort in Wisconsin. The daughter was in his custody; his wife was not invited. Nonetheless, she followed them to the resort, insulted them in the public dining room, and incurred charges at the hotel which she demanded that he pay. She demanded that the daughter's girlfriend vacate her room.

She has constantly gone to his place of residence and has caused arguments and provoked disturbances, most recently and spe-

cifically on October 6, 1972, when she tried to force herself into her husband's apartment and created a disturbance so that the husband's landlord has threatened to evict him.

She took his automobile and hid it so that he could not find it.

She constantly nags and harasses him and their children, more particularly, in the summers of 1970 and 1971, in the presence of members of the Edelson and Korshin families where she berated him, calling him 'sick, irresponsible and a poor father.' In October of 1968, when one of his patients, a Mrs. Shaw, mistakenly called him at the family home, his wife interrogated Mrs. Shaw, harassed her and maligned him. In the winter of 1971 she went to London, where his father and his brother live, and accused them of being part of a conspiracy against her. In July of 1972, she ordered new glasses which he obtained for her; and without cause or provocation, she went to the laboratory that manufactured the lenses and accused them of deliberately making the wrong prescription and demanded the money back for herself, which money he had paid. Further, she verbally abused the agents of the laboratory with whom he does business.

She has pursued a course of filing complaints against him in the juvenile court, by reason of the fact that her children refused to live with her, choosing instead to live with him. That by reason of her filing these false and fraudulent claims, he has been greatly embarrassed and put to expense and inconvenience."

■■ These allegations, as Mrs. Rosenbaum points out in her brief, were neither signed nor verified by Dr. Rosenbaum or anyone else. Nonetheless, a notary, one Donald C. Schiller, attested that they were "[s]ubscribed & sworn to before me this 9 day of November, 1972 [*sic*]." Plainly, this did not occur because no one signed the second amended complaint, nor are its allegations supported by an executed affidavit. Despite this obvious defect, it appears that the question concerning it is raised for the first time in this court, no motion concerning it having been filed below. Generally, it is said that questions concerning the sufficiency of the verification of a pleading (and we assume, concerning a signature) come too late when raised for the first time in the reviewing court. (*Furst v. W. T. Rawleigh Medical Co.*, 282 Ill. 366, 118 N.E. 763.) Therefore, we cannot consider the legal consequences of the fact that Dr. Rosenbaum never signed nor verified the allegations he made against his wife, allegations that were the bases for his claim for divorce. We turn, instead, to the question whether he proved them; and if so, whether this proof established mental cruelty within the meaning of our divorce statute.

### III.

Ten witnesses testified in this case. Dr. Rosenbaum appeared for himself, examined his wife as an adverse witness, presented the testimony of their three children and called the mother of a patient of his. In addition, he offered and the court received six exhibits. Mrs. Rosenbaum appeared for herself, examined her husband as an adverse witness, and subpoenaed four witnesses by whom she sought to establish her husband's income and investments. In addition, she offered and the court received 11 exhibits.

This evidence proved that Dr. and Mrs. Rosenbaum lived as man and wife for 17 years and were the parents of three children, two sons and a daughter. On October 15, 1965, when the sons were 14 and 16, and the daughter was 11 years old, Dr. Rosenbaum left the family home. He was in good health; he had not sought, nor did he need, medical treatment; he was pursuing his profession as an optometrist and his business was improving; his gross and net income showed an increase each year disclosed by his tax return; and, there was no change in his social activities; he remained a member of the Quadrangle Club of the University of Chicago and later joined the Contact Social Club to which belonged persons who were either single or divorced. From the time he left his family, he went on regular vacations, some which took him to Wisconsin, Japan, Jamaica and Florida. According to Dr. Rosenbaum, he left his family because for a long time his wife constantly had been accusing him of infidelity and of having illegitimate children in Europe, things which in his view were untrue, matters he considered complete fantasies. When asked in the trial of this case to explain why he moved out of his home, Dr. Rosenbaum said that his relations with his wife had completely broken down; that they had tried everything from a rabbi, psychiatrist, to the Jewish Family Services; but, to use his words, "* * * it was impossible to live under the circumstances which were existing at that time in order for me to maintain my sanity. It's as simple as that."

It was also proved that in his first divorce suit, the one decided against him, Dr. Rosenbaum had alleged that he was living separate from his wife as a single man without fault on his part. In the trial of this case, his lawyer conceded that the first suit adjudicated all the issues between the parties. One of the issues in that case was whether, as he had alleged, Dr. Rosenbaum was living separate from his wife, without fault on his part. The same issue was submitted in this case when Dr. Rosenbaum made the same allegation and it was denied by Mrs. Rosenbaum. Therefore, from his explanation of why he left his home, and from the conceded effect of the prior adjudication, the question arises whether Dr. Rosenbaum left his family without a valid reason, and thus provoked the

acts of his wife about which he now complains. This question must be answered from the evidence in the record bearing in mind the fact that he had raised it before in a case that went against him. See *Akin v. Akin*, 125 Ill. App. 2d 159, 260 N.E.2d 481.

■■ In a divorce case, whether there was or was not provocation is relevant in determining whether a plaintiff proves his case. Where the grounds for divorce are physical or mental cruelty, provocation is not an affirmative defense; indeed its presence is proof that an element of the plaintiff's prima facie case, namely cruelty, does not exist. (*Shumak v. Shumak*, 30 Ill. App. 3d 188, 191, 332 N.E.2d 177.) A divorce suit plaintiff who charges either physical or mental cruelty must allege and prove that he did not provoke the acts and conduct about which he complains. (*Stanard v. Stanard*, 108 Ill. App. 2d 240, 247 N.E.2d 438.) This rule applies to the case before us notwithstanding the 1967 amendment to the Divorce Act which provides that "[i]n every action for a divorce commenced on or after the effective date of this amendatory Act of 1967, the fault or conduct of the plaintiff, unless raised by the pleadings, is not a bar to the action nor a proper basis for the refusal of a decree of divorce." (Ill. Rev. Stat. 1967, ch. 40, par. 9a.) The 1967 amendment was not intended to alter what might or might not constitute physical or mental cruelty. (Compare *McCarrel v. McCarrel*, 17 Ill. App. 3d 1034, 309 N.E.2d 252; *Gregory v. Gregory*, 24 Ill. App. 3d 436, 321 N.E.2d 122.) It was intended to require an affirmative pleading by a defendant before the conduct of a plaintiff that is ground for divorce can be interposed as a defense. Compare *Mogged v. Mogged*, 55 Ill. 2d 221, 302 N.E.2d 293; *Williams v. Williams*, 4 Ill. App. 3d 905, 282 N.E.2d 251.

These principles compel us to notice another facet of this domestic controversy. As is common to marital discords, money was a source of constant dispute between Dr. Rosenbaum and his wife. He does not refute her assertion that she asked for the means with which she could get domestic help to assist her in the care of the family and that he refused to furnish them. Nor does he refute her statement that she asked for money with which she could improve her family's standard of living and that he refused to provide it. It is not claimed by Dr. Rosenbaum that these requests were unreasonable or that they were beyond his ability to provide.

■■ Concerning support of the children, there is evidence in the form of Dr. Rosenbaum's handwritten notes showing that in 1969, with the daughter then living with him, he decided that he would give his wife $15 per week for each of his two sons with an additional weekly sum of $3 to feed the family cat. Although it did not meet with his wife's concurrence, Dr. Rosenbaum decided that he would pay one half of the

family utility bills, the other half was to be paid by his wife. After the children left their mother and went to live with him, Dr. Rosenbaum decided that he was no longer responsible for any part of the utility bills of the family home. He wrote a letter to his wife's doctor disclaiming responsibility for her medical bills. He wrote a note to Mrs. Rosenbaum telling her that she had to pay for her own expenses because he would no longer contribute to her support. We have examined the evidence and find no justification for these unilateral judgments by Dr. Rosenbaum concerning his wife's duty and ability to bear part of the family expenses at one time and all of her support at another. It is true she was a part-time teacher and had some money of her own. But the duty of a husband to support his wife is imposed by law. *Lyons v. Schanbacher*, 316 Ill. 569, 147 N.E. 440; *Vock v. Vock*, 365 Ill. 432, 6 N.E.2d 843.

These conflicts about money were accompanied with conduct by Mrs. Rosenbaum about which her husband complains. Either in October 1969 or sometime before, she went to the Family Court in Chicago and filed a misdemeanor complaint charging Dr. Rosenbaum with non-support, a violation of the State's Non-Support of Spouse and Children Act (Ill. Rev. Stat. 1969, ch. 68, par. 24). Dr. Rosenbaum, represented by counsel, resisted the complaint on the theory that the statute in question required a wife to be destitute before she could proceed with a non-support charge against her husband. Mrs. Rosenbaum conceded that she was not destitute; she was a substitute part-time teacher and a joint owner of the home in which she lived. The trial judge, the prosecuting attorneys in that court, and apparently the court personnel responsible for the processing of such complaints, agreed with Dr. Rosenbaum and his lawyer. As a result, Mrs. Rosenbaum's complaint was dismissed. However, she rebelled against the idea that a wife had to be destitute before she could compel her husband to support her at the level to which she was entitled. As a consequence, she embarked on research which led her to discover that in 1951 the statute in question was amended to remove from its caption the word "destitute." Despite this fact, a typographical error caused the word "destitute" to remain in the caption of the statute in all the editions up to the time Mrs. Rosenbaum's rights became involved. After she called this historical printing error to his attention, the State's attorney of Cook County conceded that Mrs. Rosenbaum was correct, that a wife did not have to be destitute before she could file a non-support charge against her husband; and accordingly, he instructed his assistants to process her complaint against Dr. Rosenbaum.

This was done; and thereafter, a family court judge ordered Dr. Rosenbaum to pay his wife $25 each week for her support. When, during the pendency of this case, she tried to obtain a renewal of that order, Dr.

Rosenbaum was successful in having her enjoined from proceeding against him in the Family Court. On November 9, 1972, a motion judge below, predicated on representations that Dr. Rosenbaum's net income was $1000 per month, and his wife's approximately $78 per week, allowed her temporary alimony of $25 each week, an amount which Dr. Rosenbaum stopped paying when the judgment for divorce was entered in his favor.

In her argument of this appeal, Mrs. Rosenbaum points out that when their children were living with her, Dr. Rosenbaum's attitude concerning support of the family was penurious to the extreme. However, after they took up residence with him, his financial generosity toward them was such that it was the subject of comment by the trial judge in his oral summation of the case. It is to be observed that while in 1969 the highest weekly allowance Dr. Rosenbaum made for his sons' support was $15 for each of them; in the three years they lived with him he could estimate an expenditure of $24,000 for tuition, living expenses, the purchase or assistance in the purchase of a car for one son, and pocket money at the rate of $50 each week for his oldest son while he was in college. In our judgment, Mrs. Rosenbaum's appraisal of her husband's attitude and conduct is supported by the evidence.

However, the evidence also supports the allegations Dr. Rosenbaum made in the seven subparagraphs of his second amended complaint. It was proved that from the summer of 1969, and almost daily in the months of July and August of 1970, 1971 and 1972, Mrs. Rosenbaum constantly called her husband on the telephone, at his home and at his office, in a frequency that interfered with his work as an optometrist. In fact, she does not deny making these calls. She testified, however, that they were made necessary by his separation from her, and the necessity, when they were living with her, to obtain from him a display of interest in their children; and when they were living with him, to arouse his concern about their health.

The evidence also proved that Mrs. Rosenbaum followed Dr. Rosenbaum. Indeed, on one occasion, she rented an automobile for that purpose. It is also true that in the summer months of the years 1970 to 1972, she went on Wednesdays to the Quadrangle Club of the University of Chicago where her husband was a member and played tennis. Mrs. Rosenbaum attempted to obtain a tennis membership in the club, but Dr. Rosenbaum objected. In any event, her application deposit was returned because the Quadrangle Club did not give tennis membership privileges to a non-member. In her visits to the club, Mrs. Rosen-

baum introduced herself to those present as the wife of Dr. Kurt Rosenbaum. Dr. Rosenbaum testified that his wife's conduct in this regard caused him embarrassment, humiliation and emotional distress. Without appearing to be unsympathetic or unduly critical, we confess an inability to understand how a woman, the mother of a man's three children, can cause him embarrassment, humiliation and emotional distress by introducing herself as his wife when in fact they were married and had been so for more than 20 years.

In support of Dr. Rosenbaum's allegations, the evidence proved that in July 1969 he took his daughter, Jody, and a girlfriend of hers, on a weekend vacation to Oakton Manor, Wisconsin, a resort hotel open to the general public. On Sunday, and uninvited by him, Mrs. Rosenbaum appeared at the hotel and was told that he, the daughter and some friends, were in the dining room, seated at a table. She went in. Apparently, the people with Dr. Rosenbaum when his wife entered were their acquaintances because they greeted her; and as a result, she joined the company and proceeded to enjoy the food and refreshment being served. Sometime later, the moment came, as it always does in places of public accommodation, when the waiter asked that the checks be paid. Mrs. Rosenbaum turned to Dr. Rosenbaum and told him to pay her check since she was his wife. He refused to do so. Consequently, in the presence of the others at the table, they became involved in an acrimonious harangue. Finally, one of the men who knew both of them offered to pay the bill; but Mrs. Rosenbaum took care of it herself. Dr. Rosenbaum points to this incident and the conduct of his wife intruding on him and his daughter during a weekend vacation as acts on her part that constituted mental cruelty. In addition, he alleged, and the evidence proved, that Mrs. Rosenbaum constantly went to his home and place of business in attempts to see him; that she took possession of his automobile on one occasion and hid it from him; that she nagged and, in his judgment, harassed their children while they were living with him; and that she pursued a course of filing non-support charges against him, most of them dismissed. These acts, Dr. Rosenbaum contends, caused him mental cruelty; and apparently, without findings of fact concerning them, formed the bases for the trial court's conclusion that Mrs. Rosenbaum was guilty of extreme and repeated mental cruelty toward her husband.

■■ Mental cruelty, as a ground for divorce, consists of a course of abusive and humiliating treatment, calculated or obviously of a nature to torture, discommode, or render miserable the life of the opposite spouse; and which actually affects the physical or mental health of such spouse. (*Howison v. Howison*, 128 Ill. App. 2d 377, 262 N.E.2d 1.) To prove a case entitling a spouse to divorce on the ground of mental cruelty, the evidence must show that the conduct of the offending spouse is unprovoked and constitutes a course of abusive and humiliating treatment that makes the life of the complaining spouse miserable, or endangers his or her life, person or health. (*Rey v. Rey*, 23 Ill. App. 3d 274, 319 N.E.2d 105.) Whether the acts in question constitute mental cruelty

depends on the total factual background and is determined primarily by the effect the alleged misconduct has on the complaining party. (*Sharpe v. Sharpe*, 9 Ill. App. 3d 667, 292 N.E.2d 566.) In determining this effect, consideration must be given to the particular emotional and personal makeup of the parties, and the varying circumstances under which any of the incidents occurred that may have given rise to the acts about which complaint is made. *Stanard v. Stanard*, 108 Ill. App. 2d 240, 248, 247 N.E.2d 438.

In the case before us, and after an examination of the record, we are of the opinion that the evidence did not prove mental cruelty as that concept is used in our law of divorce. We are convinced that Dr. Rosenbaum did not prove, in fact, did not allege, lack of provocation. From his testimony, and this is the only evidence on the subject, he left his family without a valid reason. The institution of marriage would not exist in our society if every husband were free to decide for himself that preservation of his sanity, whatever that means, requires that he leave his wife and children.

Moreover, there is no evidence in this case that Dr. Rosenbaum's health, physical or mental, was adversely affected by anything his wife did after he left his family home. To the contrary, he has led a comfortable, enjoyable and steadily improving life, in a style he has pursued to his satisfaction. He has continued in his chosen work. His income has progressively increased. His interests in matters vocational and avocational have not changed or diminished.

It is true that his wife appears to be a difficult woman with whom to live. She is an insistent and persistent individual. For example, in this court she so deluged us with motions and petitions that we found it necessary to order a cessation of these filings. However, we notice that despite her insistence here and in the trial court, she always has been respectful and obedient to the requirements of our rules. From everything she has filed, here and below, there exudes a deep sense of indignation at her husband's desertion of her, his construction of her reactive conduct as mental cruelty, and his success in using that construction to obtain a divorce on terms that deprived her of benefits she claims should be hers after 27 years of marriage.

■■■ Now it is obvious, from what Dr. and Mrs. Rosenbaum have said of each other in the course of this litigation, that the marriage between them is dead. It is clear that they do not intend to renew their marriage relations. But the death of a marriage, and the fact that the parties will never again live as man and wife, do not entitle either to a divorce. (*Lowrance v. Lowrance*, 31 Ill. App. 3d 682, 335 N.E.2d 140.) Our law favors preservation of the marriage estate and will dissolve it only on sufficient proof of a ground provided in the divorce statute. (*People ex rel. Doty v. Connell*, 9 Ill. 2d 390, 394, 137 N.E.2d 849; *Kinsley v. Kinsley*, 388 Ill. 194, 197, 57 N.E.2d 449.) In this case a statutory ground was not proved. Therefore, we conclude that the judgment granting Dr. Rosenbaum a divorce on the ground of mental cruelty was contrary to the manifest weight of the evidence. (*Quilty v. Quilty*, 5 Ill. App. 3d 801, 284

N.E.2d 690; *Marks v. Marks*, 8 Ill. App. 3d 212, 289 N.E.2d 671; compare *Hayes v. Hayes*, 117 Ill. App. 2d 211, 254 N.E.2d 288.) Judgment should have been entered in favor of Mrs. Rosenbaum after the trial court had heard all the evidence. See *Edmond v. Edmond*, 20 Ill. App. 3d 40, 312 N.E.2d 766.

## IV.

■■■ We now turn to the partition aspect of this controversy. And in doing so we observe as we did earlier, that the second amended complaint consisted of two counts, one seeking partition of a parcel of real estate, the family residence; the other a divorce. In law, each count of a complaint is separate and must in itself state a complete cause of action. (*Herman v. Prudence Mutual Casualty Co.*, 41 Ill. 2d 468, 244 N.E.2d 809; *Kovar v. Bremer*, 281 Ill. App. 505.) Where a complaint contains separate counts, there should be findings as to each count with separate judgment entered on each. (*Kitter v. People*, 25 Ill. 27; compare *People ex rel. Busch v. Green*, 281 Ill. 52, 117 N.E. 764.) In this case a separate judgment was not entered on each count. There was one judgment. It was designated "Judgment for Divorce," although it contained findings concerning partition of the family home.

The partition count alleged that Dr. Rosenbaum desired a division of the jointly owned realty; and that in case division was not possible without manifest injury or prejudice to the owners, then the land was to be sold and the proceeds divided among them according to their respective rights and interests. In his prayer for relief, he asked for a judgment of partition, for the appointment of a commissioner or commissioners to partition the home; and that if a fair partition could not be made without manifest prejudice, then the property was to be sold and the proceeds, after payment of costs and charges, be divided among the owners in accordance with their respective rights.

In her answer, Mrs. Rosenbaum admitted she and her husband were joint owners of the home, but she denied all the other allegations of the count including those which stated that the property could not be divided and had to be sold. There is no evidence in this record concerning the home, its construction, size or divisibility. No one described the real estate, no one said it could not be fairly divided between Dr. Rosenbaum and his wife. Nonetheless, the trial court found that the family home could not be divided. Commissioners were not appointed; no report concerning the property was submitted. The home was ordered sold, subject to deductions for designated costs.

■■ ■ A partition action is an adversary proceeding. (*Murch v. Epley*, 385 Ill. 138, 52 N.E.2d 125.) In such an action, the party that makes affirmative allegations has the burden of proving them. (See *Scott v. Scott*, 191 Ill. 628, 61 N.E. 415; *Glos v. Carlin*, 207 Ill. 192, 69 N.E. 928; 68 C.J.S. *Partition* §101 (1950).) The object of a partition is to enable those who own property in common to sever their interests and thereby enable

each to take possession, enjoy, and improve his separate estate at his own pleasure. (*Mechling v. Meyers*, 284 Ill. 484, 120 N.E. 542.) The right to partition will not yield to any condition of hardship, inconvenience or difficulty; nor will the motive of the person or persons seeking partition affect the right to the action. (*Heldt v. Heldt*, 29 Ill. 2d 61, 193 N.E.2d 7; *Davis v. Davis*, 128 Ill. App. 2d 427, 262 N.E.2d 788.) And, in a proper case, the taxes paid by one co-owner, can be ordered reimbursed from the proceeds of the partition sale. *Kratzer v. Kratzer*, 130 Ill. App. 2d 762, 266 N.E.2d 419.

■■■ However, the law favors a division of land in kind rather than a division of the money received from its sale. (*Kloss v. Wylezalek*, 207 Ill. 328, 69 N.E. 863.) Accordingly, a partition sale is proper only where division cannot be made without prejudice to the rights of interested parties. (*Bowman v. Austin*, 393 Ill. 593, 67 N.E.2d 168.) For these reasons, a suit for partition contemplates the entry of a judgment declaring the right, title and interest of all the parties. (*Masters v. Smythe*, 342 Ill. App. 185, 95 N.E.2d 719; Ill. Rev. Stat. 1973, ch. 106, par. 48.) It requires the appointment of one or three commissioners who shall make the partition, if this is possible without manifest prejudice to the owners; and if it is not, value the premises and make a report to the court (Ill. Rev. Stat. 1973, ch. 106, pars. 49, 51, 52). Whether a partition action is by petition under the statute or by a complaint invoking equitable doctrines, an essential prerequisite of a decree of sale is the appointment of commissioners and a report by them that the land is not susceptible to partition, the law in this regard being mandatory. (*Rohn v. Harris*, 130 Ill. 525, 22 N.E. 587; *Coffin v. Argo*, 134 Ill. 276, 24 N.E. 1068.) Where a partition of land is sought by either procedure, a decree of sale is erroneous unless it is based on the report of a commissioner or commissioners. (*Peck v. Peck*, 16 Ill. 2d 268, 157 N.E.2d 249.) Commissioners were not appointed in this case; nor did the report of a commissioner or commissioners precede the court's order of sale. Therefore, the judgment for divorce did not include nor can it be construed to include a valid partition judgment.

## V.

For the reasons we have given in resolving the issues determinative of this appeal, the judgment of the trial court is reversed.

As to Count I which prayed for a partition, the cause is remanded for further proceedings not inconsistent with the views expressed in this opinion. As to Count II which prayed for a divorce, the cause is remanded with directions that it be dismissed and judgment be entered in favor of Mrs. Jean Rosenbaum.

Further, the trial court is directed to determine the amount of costs incurred by Mrs. Rosenbaum, both in her defense of the suit in the trial court (*Bauer v. Glos*, 244 Ill. 627, 633; 91 N.E. 701), and in her successful

appeal (Ill. Rev. Stat. 1973, ch. 33, par. 22), and to enter an order requiring Dr. Rosenbaum to reimburse Mrs. Rosenbaum in that amount, and to retain jurisdiction to enforce the said order.

Reversed and remanded with directions.

STAMOS, P. J., and DOWNING, J., concur.

## SUPPLEMENTAL OPINION UPON DENIAL OF REHEARING

Mr. JUSTICE HAYES[1] delivered the opinion of the court:

The first contention urged in the petition for rehearing is that this court erred in reversing outright the judgment of the trial court for divorce in favor of plaintiff-appellee-petitioner (hereinafter plaintiff), rather than reversing and remanding the cause for a new trial. The basis for the contention is as follows: plaintiff's original complaint was for partition of the marital residence, title to which was held in joint tenancy by plaintiff and defendant-appellant (hereinafter defendant); at that time, defendant still resided there, but plaintiff did not. Subsequently, plaintiff filed an amended complaint in two counts: Count I for partition, and Count II for divorce on the statutory ground of extreme and repeated mental cruelty. Defendant filed an answer responding to each Count, and the matter went to trial on the amended complaint and answer. After trial, the trial court entered a single judgment in favor of plaintiff entitled "Judgment for Divorce", in which the court found that the marital residence must be sold and so ordered. Since none of the contentions urged in this petition for rehearing relate to the partition count, no further reference to that matter need be made; for the purpose of considering the petition for rehearing, the case may be regarded as an action for divorce on the statutory ground of mental cruelty.

In our filed opinion in this case, as one independent ground for reversing the judgment for divorce in favor of plaintiff, we held that plaintiff had failed to plead and to prove an essential element of a cause of action for divorce on the ground of mental cruelty, namely, that plaintiff by his conduct had not provoked the acts of defendant which he alleged constituted the mental cruelty of defendant. As a corollary, we held further that, in an action for divorce on the ground of mental cruelty, the matter of provocation was not an affirmative defense within the scope of section 8a of the Divorce Act (Ill. Rev. Stat. 1971, ch. 40, par. 9a, effective August 14, 1967). In so holding that absence of provocation was an essential element of a cause of action for divorce on the ground of mental cruelty and not an affirmative defense to be first pleaded and proved by defendant under section 8a, we held the exact contradictory of the

[1] Mr. Justice Leighton, who delivered the opinion of the court, resigned from the court effective at the close of business on 26 February 1976, in order to accept appointment as a Federal District Court Judge. For the purpose of considering the petition for rehearing, Mr. Justice Hayes was assigned to replace Mr. Justice Leighton.

holding in a prior decision handed down in 1971 by another division of our own district of the Appellate Court of Illinois, namely, *Del Rosario v. Del Rosario* (1970), 133 Ill. App. 2d 8, 270 N.E.2d 160. *Del Rosario* held that the enactment of section 8a changed the existing Illinois law that absence of provocation was an essential element of a cause of action for divorce on the ground of mental cruelty by making provocation an affirmative defense to such a cause of action.

The then existing Illinois law was established in *Stanard v. Stanard* (1969), 108 Ill. App. 2d 240, 248, 247 N.E.2d 438. (See also *Fleener v. Fleener* (1970), 133 Ill. App. 2d 118, 263 N.E.2d 879.) The impact, if any, on then existing Illinois law of the enactment of section 8a was not involved in *Stanard* because section 8a had not become effective at the time that that action for divorce on the ground of mental cruelty had been filed. Conceding that fact, the *Stanard* court nevertheless made clear, in what must be regarded as dictum, its view that section 8a was not intended to change the existing Illinois law as to the matter of provocation in an action for divorce on the ground of mental cruelty by making provocation an affirmative defense. *Fleener* made no mention of section 8a. Hence, the *Del Rosario* court disregarded the *Stanard* dictum, and distinguished cases such as *Stanard* and *Fleener* by its construction of section 8a.

■■ Plaintiff's contention is that the trial court and the parties in the instant case, in the absence of any applicable decision of our Supreme Court, were controlled by the *Del Rosario* decision (despite decisions to the contrary, such as *Stanard* and *Fleener*, in another district of the appellate court), since *Del Rosario* was a decision of the First District, the district in which the trial court was sitting. A recent decision of the Third District of the Appellate Court has held that, where there is no applicable Supreme Court decision and where there is a conflict of appellate court decisions between appellate court districts, "[a] trial court, located in an appellate district where a conclusion on an issue is reached, should adhere to that conclusion and not to one promulgated in another district." *Garcia v. Hynes & Howes Real Estate, Inc.* (1975), 29 Ill. App. 3d 479, 482, 331 N.E.2d 634, 636.

As a consequence, plaintiff then contends that, when a case has had to be tried upon a theory of law which is rejected on appeal, then a new trial should be granted in order to permit the case to be tried upon the theory of law which is accepted on appeal. Hence, our reversal should not have been an outright reversal but should have been coupled with a remand for a new trial in order to permit plaintiff to allege and prove the essential element of absence of provocation.

We need not reach this contention for the following reason: As a second and independent ground for our outright reversal, we held that the trial court's judgment in favor of plaintiff was contrary to the manifest weight of the evidence. In so holding, we said:

> "Mental cruelty, as a ground for divorce, consists of a course of abusive and humiliating treatment, calculated or obviously of a

nature to torture, discommode, or render miserable the life of the opposite spouse; and which actually affects the physical or mental health of such spouse. [Citation.] To prove a case entitling a spouse to divorce on the ground of mental cruelty, the evidence must show that the conduct of the offending spouse * * * constitutes a course of abusive and humiliating treatment that makes the life of the complaining spouse miserable, or endangers his or her life, person or health. [Citation.] Whether the acts in question constituted mental cruelty depends on the total factual background and is determined primarily by the effect the alleged misconduct has on the complaining party. [Citation.]

* * *

Moreover, there is no evidence in this case that Dr. Rosenbaum's health, physical or mental, was adversely affected by anything his wife did after he left his family home. To the contrary, he has led a comfortable, enjoyable and steadily improving life, in a style he has pursued to his satisfaction. He has continued in his chosen work. His income has progressively increased. His interests in matters vocational and avocational have not changed or diminished." 38 Ill. App. 3d 1, 12-13.

■■ We reject plaintiff's second contention in his petition for rehearing that this holding is inconsistent with the evidence of record, and we adhere to the holding. It follows that, even assuming that on a retrial plaintiff would be able to prove the now required allegation of absence of provocation on his part, he still could not obtain a judgment in his favor owing to his failure to prove other essential elements of the cause of action, as to which other elements he is not entitled to a new trial.

In his petition for rehearing, plaintiff's final two contentions complain of certain directions which we issued to the trial court in remanding the cause to that court for entry of judgment in favor of defendant on Count II of the complaint.

■■ One direction was that the trial court conduct a hearing to determine the reasonable amount which plaintiff should have paid to defendant as temporary alimony from the filing of the second amended complaint to the entry of judgment for plaintiff, because, in view of the relative financial standing of the parties as revealed by the record, we concluded that the award of $25 per week constituted an abuse of discretion. Citing, *inter alia, Kovac v. Kovac* (1960), 26 Ill. App. 2d 29, 167 N.E.2d 281, plaintiff contends that defendant never appealed from the award of temporary alimony so that the matter was not before us for review. Plaintiff points out: (1) Defendant did not seek the required special finding in the order of November, 1972, for temporary alimony so as to ask leave for a permissive interlocutory appeal, nor did defendant ever seek such leave; (2) There is nothing relating to temporary alimony in the "Judgment for Divorce" from which defendant appealed or in the post-trial motion from the denial of which defendant appealed; (3)

Defendant's appellate brief contains only a reference to the matter of temporary alimony, which reference relates only to alleged arrearages. We conclude that plaintiff is correct in contending that the matter of temporary alimony was not before us for review, and we have accordingly modified the order portion (Part V) of our opinion.

■■ Another direction was that the trial court determine the amount of trial attorney fees paid by defendant and order plaintiff to reimburse defendant in that total amount. Plaintiff-appellee's petition for rehearing alleges that the matter of defendant's trial attorney fees was the subject of a post-judgment hearing in the trial court which resulted in an order that plaintiff pay defendant $800 toward defendant's trial attorney fees, from which order defendant did not appeal, so that the matter was not before us for review. But, as has been pointed out to us by a motion of defendant for clarification of the supplemental opinion as to the matter of trial attorney fees, the fact is that the order awarding defendant $800 toward the fees which defendant personally paid to her trial attorney out of her own pocket was incorporated into, and became a part of, the "Judgment for Divorce," from which defendant filed a timely amended notice of appeal which expressly raised the matter of the $800 award. The matter had been specifically raised in the trial court in defendant's post-trial motion to vacate the "Judgment for Divorce." We conclude that the matter is properly before us for review.

In her motion for clarification, defendant has further maintained in essence that she should have been awarded the total amount (which the motion alleges was from $850 to $1,000) which she paid out of her own pocket in fees to her trial attorney, rather than merely $800; and she asks that, on remand, the trial court be directed to determine that total amount and then to direct plaintiff to pay her the said amount. As best we can determine, defendant's reasons for her position are: (1) simply because she won her appeal, she is thereby entitled to reimbursement of her total trial attorney fees, as well as to reimbursement of her trial costs; (2) plaintiff's complaint in the instant action for divorce contained false allegations which were made in bad faith, and the action itself constituted mere harassment and abuse of defendant by plaintiff, thus entitling defendant to reasonable trial attorney fees incurred in defense, all presumably pursuant to the provisions of section 41 of the Civil Practice Act (Ill. Rev. Stat. 1971, ch. 110, par. 41); and (3) plaintiff failed to disclose certain of his assets at the hearing on the award of her trial attorney fees.

As to reason (1): Trial attorney fees are distinct from trial costs, and may be awarded only when expressly authorized by statute. There is no statute authorizing the award of trial attorney fees to the successful party on an appeal merely because that party is the successful party.

As to reason (2): It is clear from the record that the trial court did not make the specific findings necessary for recovery of attorney fees under the provisions of section 41 of the Civil Practice Act (Ill. Rev. Stat. 1971, ch. 110, par. 41). (See *Urban v. Brady* (1967), 86 Ill. App. 2d 158, 230 N.E.2d 65.) And, from the record in the instant case, we cannot say that,

in failing or refusing to make such specific findings, the trial court abused its discretion. For the legal principle, see *Greengard v. Cooper* (1966), 78 Ill. App. 2d 86, 221 N.E.2d 775.

As to reason (3): The statute authorizing the award of trial attorney fees in the instant case is section 15 of the Divorce Act (Ill. Rev. Stat. 1971, ch. 40, par. 16). As we said in *Moreau v. Moreau* (1973), 9 Ill. App. 3d 1008, 1009, 293 N.E.2d 680, 681: "It is well settled that granting of attorney's fees in a divorce action is discretionary with the trial court, but depends, nonetheless, on the relative ability ° ° ° to pay." It follows that, in order for us, at defendant's behest, to reverse the trial court's award of trial attorney fees in the amount of $800 and remand for a new hearing on that matter, we would have to hold that the trial court abused its discretion either in making the award after the original hearing or in refusing, at the subsequent hearing on defendant's motion to vacate the judgment for divorce, to reopen the original hearing for the introduction of later discovered evidence as to plaintiff's alleged concealment of assets. On the state of the record in the instant case, we cannot so hold.

For the above reasons, we hold that defendant has not established any abuse of discretion by the trial court in awarding her $800 toward her trial attorney fees, and we reject defendant's request that we reverse that award and remand the matter for a new hearing.

■■ A further direction was that defendant, because she was successful on this appeal, was entitled to recover appellate attorney fees from plaintiff, despite the absence of any statutory authorization therefor in the Divorce Act (Ill. Rev. Stat. 1973, ch. 40, par. 16). As we now see it, this issue need not be reached in this case because, even assuming that defendant was so entitled, in fact she incurred no appellate attorney fees since she conducted the entire appeal pro se. Nor is she entitled to any "attorney fee" compensation for her pro se services. (*Sanitary District v. Curran* (1907), 132 Ill. App. 241.) We have accordingly modified the order portion (Part V) of our opinion.

Defendant, however, is entitled to reimbursement from plaintiff for appellate costs incurred (Ill. Rev. Stat. 1973, ch. 33, par. 22) and for trial costs incurred since our holding is that plaintiff failed to prove a cause of action (*Bauer v. Glos* (1910), 244 Ill. 627, 633, 91 N.E. 701).

Petition for rehearing denied.

STAMOS, P. J., and DOWNING, J., concur.